No. 22-13513-AA

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

MATTHEW SCHRIER,

*Plaintiff-Appellant*,

v.

QATAR ISLAMIC BANK,

*Defendant-Appellee*.

On Appeal from The United States District Court
For the Southern District of Florida, Fort Lauderdale Division,
No. 0:20-cv-60075-RKA (Honorable Roy K. Altman)

---

### APPELLEE'S RESPONSE BRIEF[1]

---

T. Michael Guiffre
Shawn C. Layman
Leslie M. Castello
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: 202-624-6704
Fax: 202-628-5116
mguiffre@crowell.com

Aryeh L. Kaplan
Ariella J. Ederi
PILLSBURY WINTHROP SHAW
PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Phone: 786-913-4900

*Counsel for Appellee*

---

[1] Defendant-Appellee QIB expressly reserves its objections and defenses based on lack of personal jurisdiction, and does not, by filing this brief, waive any of those defenses or objections.

APPEAL NO. 22-13513-AA
MATTHEW SCHRIER V. QATAR ISLAMIC BANK

**APPELLEE'S CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

In accordance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, Appellee Qatar Islamic Bank ("QIB") submits the following Corporate Disclosure Statement:

1.    QIB (QIBK.QA) is a Qatari Public Shareholding Company listed on the Qatar Stock Exchange.

2.    QIB does not have a parent corporation, and there are no publicly held corporations owning 10% or more of its stock.

QIB further provides the following alphabetical list of trial judges, attorneys, persons, firms, partnerships, and corporations that are known to have an actual or potential interest in the outcome of this appeal:

1.    Altman, Roy K. (United States District Judge – Southern District of Florida)

2.    Baker, Emma (FOIA Counsel for Appellant)

3.    Bondurant, Mixson & Elmore, LLP (Trial and Appellate Counsel Law Firm for Appellant)

4.    Carroll, Kevin T. (Trial Counsel for Appellant)

5.    Castello, Leslie M. (Counsel for Appellee)

C-1 of 3

APPEAL NO. 22-13513-AA
MATTHEW SCHRIER V. QATAR ISLAMIC BANK

6.    Couriel, John D. (Former Trial Counsel for Appellant)

7.    Crowell & Moring LLP (Trial and Appellate Counsel Law Firm for Appellee)

8.    Ederi, Ariella J. (Counsel for Appellee)

9.    Ghali, Kamal (Counsel for Appellant)

10.   Guiffre, T. Michael (Counsel for Appellee)

11.   Hulsey, G. Scott (Former Trial Counsel for Appellant)

12.   Hughes, Hubbard & Reed LLP (FOIA Counsel for Appellant)

13.   Kaplan, Aryeh Lev (Counsel for Appellee)

14.   Kobre & Kim, LLP (Trial Counsel Law Firm for Appellant)

15.   Layman, Shawn (Counsel for Appellee)

16.   McMullen, Patrick (Former Non-Litigation Counsel for Appellant)

17.   Pillsbury Winthrop Shaw Pittman LLP (Trial and Appellate Counsel Law Firm for Appellee)

18.   Qatar Islamic Bank (Appellee)

19.   Rains IV, John H. (Counsel for Appellant)

20.   Salinas, Alexander A. (Former Trial Counsel for Appellee)

21.   Schrier, Matthew (Plaintiff-Appellant)

22.   Sellers, Matthew R. (Counsel for Appellant)

APPEAL NO. 22-13513-AA
MATTHEW SCHRIER V. QATAR ISLAMIC BANK

23.    Sparacino PLLC (Non-Litigation Counsel for Appellant)

24.    Sparacino, Ryan R. (Non-Litigation Counsel for Appellant)

25.    Squire Patton Boggs LLP (Former Trial Counsel Law Firm for Appellee)

26.    Tendler, Carrie A. (Trial Counsel for Appellant)

27.    Thompson, Donald L. (Former Trial Counsel for Appellee)

28.    Weiss, Jonathan R. (Former Trial Counsel for Appellee)

29.    Wiggin & Dana, LLP (Former Trial Counsel Law Firm for Appellant)

## STATEMENT REGARDING ORAL ARGUMENT

This appeal arises from the district court's dismissal of the Second Amended Complaint of Plaintiff-Appellant Matthew Schrier ("Schrier") for lack of personal jurisdiction over Defendant-Appellee Qatar Islamic Bank ("QIB"). QIB does not seek oral argument, as this case involves the straightforward application of settled law, but QIB is amenable to oral argument if the Court believes it would be helpful.

## **TABLE OF CONTENTS**

APPELLEE'S CERTIFICATE OF INTERESTED PERSONS  AND
CORPORATE DISCLOSURE STATEMENT.........................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..........................................i

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF JURISDICTION......................................................... 1

STATEMENT OF THE ISSUES............................................................. 2

STATEMENT OF THE CASE ................................................................ 3

I.      STATEMENT OF FACTS ........................................................ 3

II.     COURSE OF PROCEEDINGS AND DISPOSITION BELOW ................. 5

SUMMARY OF THE ARGUMENT ........................................................ 6

STANDARD OF REVIEW .................................................................... 8

ARGUMENT ...................................................................................... 9

I.      THE ANTI-TERRORISM ACT DOES NOT CONFER
        PERSONAL JURISDICTION OVER QIB WHERE SERVICE
        WAS EFFECTED OUTSIDE OF THE UNITED STATES..................... 11

        A.      Attempted Service on QIB's Patriot Act Agent in the
                United States was Improper and Ineffective ..................... 11

        B.      Alternative Service in Qatar Exceeded the Territorial
                Limitations of the ATA ................................................ 17

II.     THE FEDERAL LONG-ARM STATUTE DOES NOT
        CONFER PERSONAL JURISDICTION OVER QIB............................. 19

        A.      Fifth Amendment Due Process Requires Minimum
                Contacts Analysis for Personal Jurisdiction..................... 21

        B.      Schrier's Claims Do Not Relate to or Arise Out of QIB'S
                Contacts With The United States ..................................... 21

                1.      QIB's New York Correspondent Accounts Cannot
                        Support Specific Jurisdiction ................................. 24

                2.      The district court correctly rejected a theory of
                        conspiracy-jurisdiction under Rule 4(k)(2)............................ 33

        C.      The Exercise of Rule 4(k)(2) Jurisdiction Over QIB
                Would Be Inconsistent with the United States
                Constitution ............................................................ 39

III.   THE FLORIDA LONG-ARM STATUTE DOES NOT
       CONFER JURISDICTION OVER QIB ..................................................... 40

IV.    THE DISTRICT COURT DID NOT ABUSE ITS
       DISCRETION IN DENYING SCHRIER'S REQUEST FOR
       SANCTIONS ............................................................................................ 43

CONCLUSION .................................................................................................... 49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc.*,
  635 F.2d 434 (5th Cir. 1981) ..............................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........................35, 36

*Baker v. St. Paul Travelers Ins. Co.*,
  670 F.3d 119 (1st Cir. 2012)..........................................................9, 44

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
  12 F.3d 1045 (11th Cir. 1994) ............................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, L. Ed. 2d 929 (2007) ........................................35

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ..................................34

*C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*,
  626 F. Supp. 2d 837 (N.D. Ill. 2009)................................................19

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
  No. C10-861RSM, 2011 WL 1042578 (W.D. Wash., Mar. 18,
  2011) ......................................................................................17, 18

*Cmt'y for Creative Non–Violence v. Reid*,
  490 U.S. 730 (1989)......................................................................15

*Cohen v. Facebook*,
  252 F. Supp. 3d 140 (E.D.N.Y. 2017) ..............................................17

*Consolidated Dev. Corp. v. Sherritt, Inc.*,
  216 F.3d 1286 (11th Cir. 2000) ............................................19, 20, 39

iv

*D.J. Simmons, Inc. v. Broaddus*,
   No. CIV 99-1105 JP/LFG, 2000 WL 36739814 (D.N.M. June 21,
   2000) ................................................................................................48

*Day v. Corner Bank (Overseas) Ltd.*,
   789 F. Supp. 2d 150 (D.D.C. 2011)....................................................16

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
   593 F.3d 1249 (11th Cir. 2010) ...................................................10, 27

*F.T.C. v. Sterling Precious Metals, LLC*,
   No. 12-80597-CIV, 2013 WL 1442180 (S.D. Fla. Apr. 9, 2013) .....................15

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..........................................................23, 24, 26

*Fraser v. Smith*,
   594 F. 3d 842 (11th Cir. 2010) ......................................20, 21, 39, 40

*Hasenfus v. Secord*,
   797 F. Supp. 958 (S.D. Fla. 1989) ......................................................41

*Helicopteros Nacionales de Colombia S.A. v. Hall*,
   466 U.S. 408 (1984)...............................................................20, 22, 39

*Henderson v. Cherry, Bekaert & Holland*,
   932 F.2d 1410 (11th Cir. 1991) ....................................................15, 16

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
   43 F.4th 1303 (11th Cir. 2022) ......................................8, 21, 23, 26

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
   535 F. Supp. 3d 1299 (S.D. Fla. Apr. 27, 2021), *aff'd* 43 F.4th
   1303 (11th Cir. 2022)...........................................................................29

*In re Takata Airbag Products Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ............................................19

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013) ..............................................................24

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)............................................................................48

*Intercapital Funding Corp v. Gisclair*,
    683 So. 2d 530 (Fla. 4th DCA 1996)....................................................42

*Internet Sol. Corp. v. Marshall*,
    557 F.3d 1293 (11th Cir. 2009) .............................................10, 27, 29

*Johnson v. Royal Caribbean Cruises, Ltd.*,
    474 F. Supp. 3d 1260 (S.D. Fla. 2020).............................................10

*Kaplan v. Cent. Bank of Islamic Republic of Iran*,
    No. 10-CV-483 (RCL), 2019 WL 2103424 (D.D.C. May 14, 2019)................14

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) ...................30

*Kelly v. A1 Tech.*,
    No. 09 CIV. 962 LAK MHD, 2010 WL 1541585 (S.D.N.Y. Apr.
    12, 2010) ..............................................................................47

*Klayman v. Fitton*,
    No. 19-20544-CIV-MARTINEZ/AOR, 2019 WL 11505348 (S.D.
    Fla. July 11, 2019) .............................................................46, 47

*Lee v. Etowah Cnty. Bd. of Educ.*,
    963 F.2d 1416 (11th Cir. 1992) ..................................................9, 44

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) .....................................................30, 31

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) .................................................*passim*

*Lowery v. Ala. Power Co.*,
    483 F.3d 1184 (11th Cir. 2007) .......................................................14

*LSLJ Partnership v. Frito-Lay, Inc.*,
    920 F.2d 476 (7th Cir. 1990) .....................................................44, 45

*Martin v. Kuhl*,
    528 So. 2d 71-72 (Fla. 4th DCA 1988) ............................................42

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012) .......................................................9

*Merkin v. PCA Health Plans of Fla., Inc.*,
    855 So. 2d 137 (Fla. 3d DCA 2003) ...................................................................42

*Mitnor Corp. v. Club Condominiums*,
    339 F.R.D. 312 (N.D. Fla. 2021) ......................................................................46

*Morris v. Khadr*,
    415 F. Supp. 2d 1323 (D. Utah 2006).........................................................37, 38

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)....................................................37

*Nelson v. Swift*,
    271 F.2d 504 (D.C. Cir. 1959)..............................................................12, 15, 16

*New World Network Ltd. v. M/V NORWEGIAN SEA*,
    No. 05-22916-CIV, 2007 WL 1068124 (S.D. Fla. Apr. 6, 2007) ......................47

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) ...........................................................20, 29, 39

*Oueiss v. Saud*,
    No. 1:20-CV-25022-KMM, 2022 WL 1311114 (S.D. Fla. Mar. 29,
    2022) ...................................................................................................................34

*Polskie Linie Oceaniczne v. Seasafe Trans. A/S*,
    795 F.2d 968 (11th Cir. 1986) ...........................................................................10

*Posner v. Essex Ins. Co.*,
    178 F.3d 1209 (11th Cir. 1999) .........................................................................10

*PowerTec Sols. Int'l, LLC v. Hardin*,
    No. 19-61373-CV-ALTMAN/Hunt, 2019 U.S. Dist. LEXIS
    201216 (S.D. Fla. Nov. 20, 2019).........................................................................9

*Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*,
    353 F.3d 916 (11th Cir. 2003) .......................................................................8, 11

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur
    Limitada*,
    No. 09–23248–CIV, 2011 WL 5057203 (S.D. Fla. Oct. 24, 2011) ...................41

*Ramos-Barrientos v. Bland*,
    661 F.3d 587 (11th Cir. 2011) .....................................................................12, 17

*Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*,
  119 F.3d 935 (11th Cir. 1997) ...........................................................17

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*,
  579 F. App'x 779 (11th Cir. 2014) ....................................................43

*Russo v. Fink*,
  87 So. 3d 815 (Fla. 4th DCA 2012) ...................................................42

*Schansman v. Sberbank of Russia PJSC*,
  565 F. Supp. 3d 405 (S.D.N.Y. 2021) ..........................................31, 32

*Schwarz v. City of Treasure Island*,
  544 F.3d 1201 (11th Cir. 2008) .........................................................14

*Scultpchair, Inc. v. Century Arts, Ltd.*,
  94 F.3d 623 (11th Cir. 1996) .......................................................27, 29

*Security Nat'l Bank of Sioux City v. Day*,
  800 F.3d 936 (8th Cir. 2015) .........................................................9, 44

*Showan v. Pressdee*,
  922 F.3d 1211 (11th Cir. 2019) ...................................................44, 45

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006) .........................................................10

*Stansell v. BGP, Inc.*,
  No. 8:09–cv–2501–T–30AEP, 2011 WL 1296881 (M.D. Fla. Mar.
  31, 2011) .............................................................................................11

*Storm v. Carnival Corp.*,
  No. 20-22227-Civ-WILLIAMS/TORRES, 2020 WL 7415835
  (S.D. Fla. Dec. 18, 2020) ...................................................................21

*Straus v. Credit Lyonnais, S.A.*,
  175 F. Supp. 3d 3 (E.D.N.Y. 2016) ...................................................32

*Tamam v. Fransabank SAL*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) .........................................16, 24

*U.S. S.E.C. v. Carillo*,
  115 F.3d 1540 (11th Cir. 1997) .........................................................18

*United States v. Edmondson*,
   791 F.2d 1512 (11th Cir. 1986) ............................................................9

*United States v. Irey*,
   612 F.3d 1160 (11th Cir. 2010) (en banc) .......................................33

*United States v. Tianello*,
   860 F. Supp. 1521 (M.D. Fla. 1994)..................................................15

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) .......................................................10

*Vasquez v. Hong Kong and Shanghai Banking Corp., Ltd.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020) .........................................24, 30

*Virgin Health Corp. v. Virgin Enters. Ltd.*,
   393 F. App'x 623 (11th Cir. 2010) ...................................................21

*Waite v. All Acquisition Corp.*,
   901 F. 3d 1307 (11th Cir. 2018) ......................................................22

*Walden v. Fiore*,
   571 U.S. 277 (2014)...........................................................................34

*Weiss v. Nat'l Westminster Bank, PLC*,
   176 F. Supp. 3d 264 (E.D.N.Y. 2016) .........................................30, 31

*Williams Electric v. Honeywell, Inc.*
   854 F.2d 389 (11th Cir. 1988) .........................................................43

*Wultz v. Islamic Rep. of Iran*,
   755 F. Supp. 2d 1 (D.D.C. Oct. 20, 2022)............................37, 38, 39

**Statutes**

15 U.S.C. § 77v(a) .......................................................................................18

15 U.S.C. § 78aa .........................................................................................18

18 U.S.C. § 2333 ...........................................................................................1

18 U.S.C. § 2334(a) ...................................................................2, 6, 11, 14

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1367 ...................................................................................1

31 U.S.C. § 5318(k)(3)(A)-(B) ...........................................................16

Fla. Stat. § 48.193 ...............................................................................43

Fla. Stat. § 48.193(1)(a) ...............................................................*passim*

**Rules**

Fed. R. Civ. P. 4 ...................................................................8, 13, 14

Fed. R. Civ. P. 4(f) .............................................................................11

Fed. R. Civ. P. 4(f)(3) ...................................................................11, 17

Fed. R. Civ. P. 4(h) .............................................................................14

Fed. R. Civ. P. 4(k)(2) ...............................................................*passim*

Fed. R. Civ. P. 4(k)(2)(B) .............................................................20, 39

Fed. R. Civ. P. 30 ................................................................................46

Fed. R. Civ. P. 30(c)(2) ......................................................................46

Fed. R. Civ. P. 30(d) .....................................................................47, 48

Fed,. R. Civ. P. 37 ...............................................................................48

Fed. R. Civ. P. 37(a)(3)(B)(i) ............................................................47

Fed. R. Civ. P. 60(b) ..........................................................................45

**U.S. Constitution**

U.S. Const., amend. V (Due Process Clause) ................................7, 21

U.S. Const., amend. XIV ..............................................................19, 21

**Other Authorities**

3 C.J.S. *Agency* § 601 (updated June 2021)...................................12

Restatement (Third) of Agency § 1.01 (2006)...........................................................15

*Schansman v. Sberbank of Russia PJSC*, No. 19-cv-02985-ALC
    (S.D.N.Y) [Dkt. 156] ...........................................................................32

## STATEMENT OF JURISDICTION

The district court did not have personal jurisdiction over QIB and accordingly dismissed Schrier's claims for lack of personal jurisdiction for the second time on September 30, 2022. That dismissal is the subject of Appellant's appeal, which was timely filed on October 19, 2022.

The district court had federal question jurisdiction under 28 U.S.C. § 1331 to hear claims asserted by Appellant under the Anti-Terrorism Act, 18 U.S.C. § 2333. The district court also had supplemental jurisdiction over Appellant's state-law claims under 28 U.S.C. § 1367.

This Court has jurisdiction to review the district court's final order disposing of all parties' claims with prejudice and without leave to amend under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The issues presented for review are:

1.      Whether the district court's factual finding that Global Payments Advisory Group ("GPAG") was not authorized to accept service on behalf of QIB was clearly erroneous;

2.      Whether the district court erred in its decision that it could not exercise personal jurisdiction under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2334(a) or Federal Rule of Civil Procedure 4(k)(2);

3.      Whether the district court erred in its decision that it could not exercise personal jurisdiction under the Florida Long-Arm Statute, Fla. Stat. § 48.193(1)(a); and

4.      Whether the district court abused its discretion by not granting Appellant untimely discovery motion for sanctions embedded within his opposition to QIB's Motion to Dismiss the Second Amended Complaint.

## STATEMENT OF THE CASE

Qatar Islamic Bank ("QIB")—a private Qatari bank—acknowledges the heinous acts perpetrated against Matthew Schrier by the Nusra Front and Ahrar al-Sham in Syria. But QIB is not responsible for those acts and Schrier has not shown otherwise. With respect to the central issue on appeal, Schrier has failed to establish personal jurisdiction over QIB under all three of the jurisdictional theories he advances. And the district court did not abuse its discretion by not granting Schrier's untimely request for discovery sanctions. Accordingly, this Court should affirm the district court's Order Granting QIB's Motion to Dismiss the Second Amended Complaint.

## I.    STATEMENT OF FACTS

Schrier alleges that he was kidnapped near the Syrian border by the Nusra Front, a Syrian terrorist organization, and held captive by the Nusra Front and its ally, the terrorist organization Ahrar al-Sham, from December 31, 2012 to July 29, 2013. Dkt. 149, ¶¶ 1-2, 42. Schrier's claims arise from this kidnapping and detention, and he seeks to hold QIB accountable for these events. But QIB is not the responsible party.

Schrier alleges that QIB opened and maintained a routine bank account in Qatar in the name of the son of Saad bin Saad al-Kabi ("al-Kabi") at least two months prior to Schrier's escape. *Id*., ¶ 115. According to Schrier, al-Kabi used this account

beginning in May 2013 to fundraise for the Nusra Front through a social media campaign (the "Madid Campaign"), these donations facilitated his kidnapping or detention, and QIB processed these transactions using its correspondent bank accounts in New York. *Id*., ¶¶ 5-8. Schrier further alleges that because of QIB's vaguely alleged due diligence policies, QIB knew about al-Kabi's association with the Nusra Front, and therefore that the account was being used to fund terrorist organizations. *Id*., ¶¶ 7, 122. But Schrier also concedes that even the United States government did not designate al-Kabi as a Specially Designated Global Terrorist ("SDGT") for his association with the Nusra Front until August 2015, more than two years after Schrier escaped captivity. *Id*., ¶ 111. Schrier provides no further explanation as to how QIB could have known that the father of an account holder was affiliated with a Syrian terrorist organization.

Schrier also alleges that QIB supported Syrian terrorism by purportedly donating to and maintaining routine bank accounts for Qatar Charity, and processing correspondent account transactions for Qatar Charity that supported Syrian terrorism. *Id*., ¶¶ 4, 12. Schrier goes on to allege that QIB entered into a conspiracy with Qatar Charity, the Nusra Front, Ahrar al-Sham, al-Kabi, and "others" to support terrorist activities in Syria. *See e.g., id*., ¶¶ 14-15, 257, 356. But all of these conclusory allegations were proven false by competent evidence. Jurisdictional discovery established that not a single dollar flowed through QIB's correspondent

accounts that relate to Schrier's claims in any way, or indeed had any illegitimate purpose at all. Instead, jurisdictional discovery established that there were *no* transactions concerning al-Kabi and only three unrelated transactions concerning Qatar Charity before Schrier's escape, consisting of a donation to the United Nations, a payment for a printer, and a payment for a public relations conference.

## II.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

The district court dismissed Schrier's original complaint for lack of personal jurisdiction and improper service without prejudice and with leave to amend. Dkt. 74. The district court found that Schrier had failed to effectively serve QIB and failed to establish a basis for personal jurisdiction over QIB. But the district court afforded Schrier the opportunity to amend his complaint and conduct jurisdictional discovery. *Id*. Shortly thereafter, Schrier filed his First Amended Complaint, Dkt. 76, which, aside from removing several instances of "upon information and belief," was identical to the original Complaint, and jurisdictional discovery commenced.

Following the conclusion of jurisdictional discovery, Schrier filed his Second Amended Complaint. This complaint again contained largely identical allegations to the original complaint and added little to Schrier's factual and jurisdictional allegations. Dkt. 149. QIB moved for a second time to dismiss the action, arguing that the evidence produced during jurisdictional discovery established that the district court did not have personal jurisdiction over QIB. *See generally*, Dkt. 156-

1. QIB also argued that the Second Amended Complaint failed to state a claim for relief, and that the district court should decline to exercise supplemental jurisdiction over Schrier's state-law claims. *Id*. QIB submitted documentary and affidavit evidence in support of its motion to dismiss. Dkt. 156-2, 156-3, 163-1.

The district court granted QIB's motion to dismiss the Second Amended Complaint, concluding that it lacked personal jurisdiction over QIB under (i) the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2334(a), where Schrier failed to perfect nationwide service of process on QIB under the ATA, (ii) the Florida Long-Arm Statute, where Schrier's claims do not arise from any tortious act within Florida, and (iii) the so-called Federal Long-Arm Statute—Rule 4(k)(2)—where the exercise of jurisdiction under Rule 4(k)(2) would not be consistent with due process.

## SUMMARY OF THE ARGUMENT

The district court correctly held that it did not have personal jurisdiction over QIB. The Second Amended Complaint contains voluminous conclusory allegations that are insufficient to make even a *prima facie* case of personal jurisdiction. Despite being afforded jurisdictional discovery, Schrier failed to develop any evidentiary basis for personal jurisdiction over QIB. Indeed, jurisdictional discovery *established* that QIB's attenuated contacts with New York (and the complete absence of any other contacts with the United States as a whole) could not support the exercise of

6

specific personal jurisdiction in this case.[2] Because Schrier failed to refute QIB's jurisdictional evidence—or even make a *prima facie* showing of jurisdiction—the district court correctly held that it lacked personal jurisdiction over QIB.

The district court correctly concluded that personal jurisdiction over QIB was lacking under all three jurisdictional theories advanced by Appellant. The district court correctly determined that Schrier could not invoke the ATA as a statutory basis for personal jurisdiction where service was attempted on an unauthorized agent in the United States and service was instead effected outside of the United States. The district court also correctly determined that Schrier could not establish specific personal jurisdiction over QIB under Rule 4(k)(2) because such an exercise of jurisdiction would be unconstitutional under the Due Process Clause of the Fifth Amendment where QIB did not have sufficient minimum contacts with the United States. Finally, the district court correctly determined that exercising jurisdiction under the Florida Long-Arm Statute would be improper, both because the tortious conduct alleged by Schrier did not occur within Florida and because such alleged conduct did not give rise to Schrier's claims.

In sum, the district court properly applied the controlling legal standards in concluding that it lacks jurisdiction over QIB. This Court should affirm.

---

[2] As the district court stated, Appellant conceded that QIB is not subject to general personal jurisdiction. Dkt. 182 at 22.

Schrier also asks the Court to consider whether the district court abused its discretion by not explicitly addressing Schrier's untimely discovery motion for sanctions, which Schrier embedded within his opposition to QIB's Motion to Dismiss. Unlike the cases on which Schrier relies, the district court did not refuse to decide Schrier's motion based on an erroneous belief that it did not have the discretion to do so, and therefore, it did not abuse its discretion. In any event, QIB properly refused to answer merits-based deposition questions when the district court had ordered discovery limited to jurisdictional issues. Schrier elected not to move to compel discovery, which would have further demonstrated that his claims were meritless, and instead embedded his request for an adverse inference in his opposition to QIB's Motion to Dismiss.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for lack of personal jurisdiction *de novo*. *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1307 n.1 (11th Cir. 2022). A district court's interpretation of Rule 4 of the Federal Rules of Civil Procedure is generally reviewed *de novo*. *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 920 (11th Cir. 2003).

Additionally, a district court's findings of fact are reviewed for clear error, even though its legal conclusions pertaining to personal jurisdiction are subject to *de novo* review. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir.

2013) (citing *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012). "A finding of fact is clearly erroneous only when a reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986).

The standard of review in considering discovery disputes—including sanctions— is for abuse of discretion; to reverse, the Court must be left with a definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1048 (11th Cir. 1994); *see also Lee v. Etowah Cnty. Bd. of Educ.*, 963 F.2d 1416, 1420 (11th Cir. 1992) (discovery ordered reviewed for abuse of discretion); *Baker v. St. Paul Travelers Ins. Co.,* 670 F.3d 119, 122 (1st Cir. 2012) (discovery orders, including the denial of a motion for discovery sanctions, are reviewed for abuse of discretion); *Security Nat'l Bank of Sioux City v. Day*, 800 F.3d 936, 941 (8th Cir. 2015) (same).

## ARGUMENT

A plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (emphasis added) (citation omitted). Vague and conclusory allegations "do not suffice to establish a *prima facie* case of personal jurisdiction." *PowerTec Sols. Int'l, LLC v. Hardin*, No. 19-61373-CV-ALTMAN/Hunt, 2019 U.S. Dist. LEXIS 201216,

at *7 (S.D. Fla. Nov. 20, 2019) (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006)).

Even if a plaintiff meets this burden, the defendant can rebut the allegations by submitting affidavits, documents, or testimony. *See Internet Sol. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). However, the burden then shifts "back to the plaintiff, this time requiring the plaintiff to prove—not merely allege—jurisdiction by affidavits, testimony, or other documents." *Johnson v. Royal Caribbean Cruises, Ltd.*, 474 F. Supp. 3d 1260, 1265 (S.D. Fla. 2020) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214-15 (11th Cir. 1999)); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Courts construe *reasonable* inferences in favor of the plaintiff only if the evidence conflicts. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

Similarly, "if the defendant makes a showing of the inapplicability of the long-arm statute, 'the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id*. (quoting *Polskie Linie Oceaniczne v. Seasafe Trans. A/S*, 795 F.2d 968, 972 (11th Cir. 1986)). Here, QIB has sufficiently rebutted Schrier's jurisdictional allegations with evidence, but Schrier has altogether failed to meet his burden to substantiate the same.

## I.   THE ANTI-TERRORISM ACT DOES NOT CONFER PERSONAL JURISDICTION OVER QIB WHERE SERVICE WAS EFFECTED OUTSIDE OF THE UNITED STATES

The ATA provides for nationwide service of process, allowing the exercise of jurisdiction over a defendant that is served "in any district where the defendant resides, is found, or has an agent." 18 U.S.C. § 2334(a); *Stansell v. BGP, Inc.*, No. 8:09–cv–2501–T–30AEP, 2011 WL 1296881, at *3 (M.D. Fla. Mar. 31, 2011) (Moody, J.) ("The ATA authorizes nationwide service of process to establish jurisdiction."). Schrier concedes that service pursuant to the ATA must occur within the United States. *See* Appellant's Br. at 16, 20. But Schrier did not serve QIB in the United States. Instead Schrier first attempted to serve QIB's unauthorized agent in the United States and then elected serve QIB in Qatar via FedEx pursuant to alternative service ordered by the district court, at Schrier's request, under Rule 4(f)(3). Dkts. 97-98, 121. Rule 4(f) only permits a foreign corporation to be served "at a place <u>not</u> within any judicial district of the United States." *Prewitt Enterprises, Inc.*, 353 F.3d at 921. Because Schrier did not serve QIB in the United States pursuant to the ATA's nationwide service provision, the district court correctly held that the ATA could not provide a basis to exercise personal jurisdiction over QIB.

### A.   Attempted Service on QIB's Patriot Act Agent in the United States was Improper and Ineffective

Schrier first attempted service on QIB's U.S. Patriot Act agent, GPAG, in January 2020 via e-mail. Dkt. 182 at 13. However, the district court correctly

11

decided—twice—that GPAG lacked authority to accept service of process on behalf of QIB in a private civil action based on the limitations on GPAG's authority specified in QIB's contract with GPAG. Dkts. 182 at 14; 163-1, Exh. J. After reviewing the evidence, the district court found that the contract between GPAG and QIB authorizes GPAG to accept service *only* in limited scenarios under the U.S. Patriot Act, none of which encompass Schrier's private civil action. *Id.* The district court correctly pointed out that Schrier ultimately "bears the burden of proving that QIB authorized GPAG to accept service *in this kind of case*" and that he had failed to do so. Dkt. 182 at 18 (emphasis in original) (citing *Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)). And Schrier himself concedes that "the district court is undoubtedly correct that, as a general rule, a principal can limit an agent's authority." Appellant's Br. at 18. Indeed, the law of agency is clear. *See Ramos-Barrientos v. Bland*, 661 F.3d 587, 600 (11th Cir. 2011) ("[A]n agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts[.]") (cleaned up) (citations omitted); *Nelson v. Swift*, 271 F.2d 504, 505 (D.C. Cir. 1959) ("According to the agent's undisputed affidavit the appellee had not authorized him, in writing or orally, to accept or receive service of process on her behalf. The District Court rightly quashed service."); 3 C.J.S. *Agency* § 601 (updated June 2021)

("Evidence sufficient to establish an agency for one purpose does not tend to prove the existence of an agency for another entirely different purpose.").

Nevertheless, Schrier argues that the ATA "authorizes service on 'an agent,' full stop" and because GPAG is an agent of QIB (even if one not authorized to accept this type of service), the normal rules governing agency need not apply because Congress did not specifically state that they should. Appellant's Br. at 16. As an initial matter, Schrier did not raise this argument in response to QIB's motion to dismiss the Second Amended Complaint, upon which the order underlying this appeal is based. Dkt. 158 at 1.[3] Instead, he purported to "respect[ ] the Court's [prior] ruling . . . that service on GPAG did not effect service under the ATA's nationwide service provision," and framed his argument on the basis of new evidence which, he claimed, showed that GPAG was actually authorized by QIB to accept service on its behalf in a private civil action. *Id.* This factual issue concerning the scope of GPAG's agency was the only argument regarding ATA service that Schrier presented for the district court's consideration.

In any event, the argument that the ATA allows service upon any "agent," whether authorized or not, is contrary to the ATA, Fed. R. Civ. P. 4, the Patriot Act

---

[3] Schrier previously raised this argument in his opposition to QIB's motion to dismiss the original complaint, which was granted. Dkts. 38 at 2; 74. Schrier failed to re-raise this argument at any point in opposing the motion to dismiss his Second Amended Complaint.

13

agency rule, and common sense. The ATA's *venue* provision, 18 U.S.C. § 2334(a), does not prescribe a method for service of process, but rather specifies *where* service may be effected ("any district where the defendant resides, is found, or has an agent"). The ATA—through its venue provision or otherwise—does not address upon *whom* service may be effected, and it does not displace the requirements of Rule 4. *See e.g., Kaplan v. Cent. Bank of Islamic Republic of Iran*, No. 10-CV-483 (RCL), 2019 WL 2103424, at \*2 (D.D.C. May 14, 2019); Fed. R. Civ. P. 4(h) (requiring that an agent be "authorized by appointment or law to receive service of process"). Despite Schrier's attempt to conflate statutes providing methods of service with the ATA's venue provision, he provides no actual precedent or support for his argument that Congress intended to permit service on unauthorized agents. *See* Appellant's Br. at 16-18.

Schrier's argument also fails to address the obvious, which is that normal rules (including those governing agency) should always apply *unless* Congress provides otherwise. Where a term is not defined by the statute, courts look to the word's ordinary meaning.[4] *See e.g., Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1214

---

[4] Nor is the Court required to look for additional guidance as to Congress' intent unless there is an ambiguity in the language of the statute. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1205 (11th Cir. 2007) ("When ambiguity in a statute renders congressional intent unclear, and that lack of clarity cannot be resolved through the sort of intrinsic aids we have employed here, it is appropriate to resort to extrinsic aids such as legislative history.").

(11th Cir. 2008). "[W]here Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *United States v. Tianello*, 860 F. Supp. 1521, 1524 (M.D. Fla. 1994) (applying normal agency rules to the undefined term "agent") (quoting *Cmt'y for Creative Non–Violence v. Reid,* 490 U.S. 730, 739 (1989)). Courts in this Circuit confronted with a similar lack of definition for an "agent" in a statute have, in looking to its ordinary meaning, applied the normal rules of agency consistent with this principle. *See F.T.C. v. Sterling Precious Metals, LLC*, No. 12-80597-CIV, 2013 WL 1442180, at *5 (S.D. Fla. Apr. 9, 2013) (citing Restatement (Third) of Agency § 1.01 (2006)); *Tianello*, 860 F. Supp. at 1524.

Schrier relies on *Nelson v. Swift* and *Henderson v. Cherry* to support his contention that the legislature may authorize service on individuals other than those authorized by the defendant.  Appellant's Br. at 18.  Neither of those cases applies here.  First, Schrier misunderstands the implication of *Nelson*, whose reference to substituted service in no way indicates that service could be made upon an agent who has a limited and expressly-defined scope of authority that does not include accepting such service. *Nelson v. Swift*, 271 F.2d 504 (D.C. Cir. 1959). And in *Henderson,* service on an employee was valid because Georgia law permitted service on employees. *Henderson v. Cherry, Bekaert & Holland*, 932 F.2d 1410,

1412 (11th Cir. 1991). Here, however, Congress has not explicitly excluded the ATA's nationwide service of process provision from longstanding agency rules. Nor does Schrier cite any authority that addresses Congress' interpretation of "agent" or otherwise indicates that Congress intended special rules to apply to agents for the purpose of the ATA. *Nelson* and *Henderson* are therefore inapposite.

Schrier essentially seeks to create a new rule that would permit plaintiffs to serve private causes of action upon Patriot Act agents. But the Patriot Act provides only for the service of a government summons—by the Secretary of the Treasury or the Attorney General—for bank records, not a private lawsuit. 31 U.S.C. § 5318(k)(3)(A)-(B); *see Day v. Corner Bank (Overseas) Ltd.*, 789 F. Supp. 2d 150, 157 (D.D.C. 2011) (holding statute "requires only that an agent be designated to receive service from either the Secretary of the Treasury or the Attorney General of the United States, and does not apply to private causes of action."); *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 732 (S.D.N.Y. 2010) ("[T]he fact that these PATRIOT Act certifications require foreign banks to designate a proxy to accept service of process by the U.S. Government does not indicate that Defendants should reasonably foresee being haled into a U.S. Court . . ."). GPAG is a Patriot Act agent whose authorization is expressly limited to service pursuant to the Patriot Act. Dkt. 163-1, Exh. J. As the district court stated, and as Schrier himself concedes, an agent may only act for its principal to the extent that the principal has "authorized" it to do

so. *See Ramos-Barrientos v. Bland*, 661 F.3d 587, 600 (11th Cir. 2011); Appellant's Br. at 18.

Schrier's attempted service on GPAG was therefore manifestly improper and ineffective, and the district court correctly concluded that it could not serve as a basis for the exercise of specific personal jurisdiction over QIB under the ATA.

### B.    Alternative Service in Qatar Exceeded the Territorial Limitations of the ATA

Schrier moved for court authorization for alternative service under Fed. R. Civ. P. 4(f)(3). This request was granted, and Schrier subsequently represented that he served QIB in Qatar via FedEx. *See* Dkts. 87, 97-98, 121; *see also* Dkt. 182 at 18-19. Because Schrier elected to serve the summons outside of the United States, which exceeds the territorial limitations of the ATA, the district court correctly held that he did not effect service under the ATA and was therefore precluded from invoking the ATA as a statutory basis for personal jurisdiction. Dkt. 182 at 20; *see Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."); *Cohen v. Facebook*, 252 F. Supp. 3d 140, 152 (E.D.N.Y. 2017) (where the ATA authorizes nationwide service, as opposed to worldwide service, service of process must occur in the United States); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861RSM, 2011 WL 1042578, at * 1 (W.D. Wash., Mar. 18, 2011) ("[I]t would be inappropriate for courts to

effectively extend the territorial reach of a federal statute" where the statute "provides for nationwide service of process.").

Nor are Schrier's policy arguments persuasive.[5] Congress could have elected to include a worldwide, rather than nationwide, service provision in the ATA, which would permit the exercise of jurisdiction on a foreign defendant served anywhere in the world. *See U.S. S.E.C. v. Carillo*, 115 F.3d 1540, 1544 n.4 (11th Cir. 1997) (personal jurisdiction invoked on the basis of federal securities laws, which provide for worldwide service of process; the language of 15 U.S.C. §§ 77v(a) and 78aa authorizes service of process on a defendant in any district "of which the defendant is an inhabitant or wherever the defendant may be found," and expressly provide for "extraterritorial jurisdiction"). But Congress did not. Courts are thus bound by that limitation. *See Cascade Yarns, Inc.,* 2011 WL 1042578, at *8 (stating it "would be inappropriate for a federal court to effectively extend the territorial reach of a federal statute" when not authorized by such statute) (citation omitted).

---

[5] This includes Schrier's argument that the district court ignored Congress' findings in enacting JASTA. Appellant's Br. at 43-44. Schrier conflates direct and indirect *liability* under JASTA with *jurisdictional* requirements, a completely separate analysis.

## II.   THE FEDERAL LONG-ARM STATUTE DOES NOT CONFER PERSONAL JURISDICTION OVER QIB

Under the prevailing legal standards, the district court properly rejected Schrier's argument that personal jurisdiction could be exercised over QIB pursuant to the so-called federal long-arm statute, Rule 4(k)(2). Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) provides for jurisdiction where a defendant has "ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 844 (N.D. Ill. 2009) (citation omitted); *see also In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d 1101, 1151-52 (S.D. Fla. 2019). As the district court properly stated, in cases where the court is exercising personal jurisdiction under Rule 4(k)(2), "the applicable forum for the minimum contacts analysis is the United States."[6] Dkt. 182 at 31 (citing *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)).[7]

The district court applied the prevailing preliminary analysis of this Circuit in determining whether Rule 4(k)(2) could be applicable, considering: (1) whether QIB is "not amenable to the jurisdiction of any state's courts of general jurisdiction[,]"

---

[6] Where, as here, the only contacts alleged are between QIB and a single state, New York, Rule 4(k)(2) should be inapplicable. *See* Dkt. 156-1 at 7 (collecting cases).

[7] As discussed *infra*, the district court also correctly rejected Schrier's arguments that it need not apply the "minimum contacts" analysis because Rule 4(k)(2) implicates the Fifth, rather than Fourteenth Amendment. *See* Dkt. 182 at 31-32 n.16.

(2) whether the plaintiff asserted "a claim that arises under federal law" and (3) whether the plaintiff has "serve[d] a summons or fil[ed] a waiver of service." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009); Fed. R. Civ. P. 4(k)(2); Dkt. 182 at 29, 31. Although the district court concluded that Schrier met these three preliminary elements based on the assumption that QIB is not amenable to jurisdiction in the courts of any state,[8] it ultimately determined that he failed to meet the final element, which requires that the "exercise of jurisdiction be consistent with the United States Constitution[.]" Dkt. 182 at 31; Fed. R. Civ. P. 4(k)(2)(B).[9]

This Court has held that Rule 4(k)(2)'s specific personal jurisdiction due process analysis requires that (1) QIB "must have contacts [in the United States] related to or giving rise to the plaintiff's cause of action"; (2) QIB must, "*through those contacts*, have purposefully availed itself of forum benefits," and (3) QIB's "contacts with the forum must be such that it could reasonably anticipate being haled

---

[8] Consistent with its position before the district court, QIB is not subject to the jurisdiction of any state's courts of general jurisdiction and reserves its right to object to such jurisdiction in any future proceedings.

[9] As this Court has stated, "[j]urisdiction 'consistent with the Constitution and laws of the United States' is that which comports with due process." *Consolidated Dev.*, 216 F.3d at 1291. To comport with due process, the non-resident defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *See Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 (1984); *Fraser*, 594 F. 3d at 846; *Oldfield,* 558 F.3d at 1220.

into court there." *Fraser v. Smith*, 594 F. 3d 842, 850 (11th Cir. 2010) (emphasis added); *see also Louis Vuitton*, 736 F.3d at 1355; Dkt. 182 at 33. But, "even if Rule 4(k)(2) could apply, conclusory statements do not constitute the *prima facie* showing necessary to carry the burden of establishing jurisdiction." *Storm v. Carnival Corp*., No. 20-22227-Civ-WILLIAMS/TORRES, 2020 WL 7415835, at *11 (S.D. Fla. Dec. 18, 2020) (citation omitted); *see also Virgin Health Corp. v. Virgin Enters. Ltd.,* 393 F. App'x 623, 627 n.2 (11th Cir. 2010) (plaintiff "bears the burden of pleading jurisdiction" under Rule 4(k)(2)). Here, the district court correctly determined that Schrier failed to meet this burden.

### A.    Fifth Amendment Due Process Requires Minimum Contacts Analysis for Personal Jurisdiction

Schrier argues the minimum contacts analysis is not required where Rule 4(k)(2) implicates the Fifth, rather than Fourteenth, Amendment. Appellant's Br. at 45-46. But as Schrier himself concedes, it is well-settled in this Court that "courts should analyze personal jurisdiction under the Fifth Amendment using the same basic standards and tests that apply under the Fourteenth Amendment." *Herederos*, 43 F.4th at 1308.

### B.    Schrier's Claims Do Not Relate to or Arise Out of QIB'S Contacts With The United States

Schrier alleges two categories of minimum contacts with the United States: (1) QIB's maintenance of New York correspondent accounts, and (2) its alleged co-

conspirators' conduct in Syria being directed at and having an effect in the United States.[10] Appellant's Br. at 24. But these contacts, whether real or imagined, are insufficient both to establish a *prima facie* case for jurisdiction and to rebut QIB's evidence that such contacts are unrelated to Schrier's claims.

The "relationship among the defendant, the forum, and the litigation is the *essential foundation*" of specific personal jurisdiction. *Helicopteros Nacionales de Colombia S.A.*, 466 U.S. at 414 (emphasis added). "[A] fundamental element of the specific jurisdiction calculus is that [the] plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton*, 736 F.3d at 1355 (cleaned up); *see* Dkt. 182 at 33. Without that connection, there cannot be specific personal jurisdiction.

In its Order, the district court acknowledged that prior precedent in this Circuit, wherein "a tort 'arises out of or relates' to the defendant's activities" in the forum "only if the activity is a 'but-for' cause of the tort," is no longer applicable. Dkt. 182 at 33, n.17 (quoting *Waite v. All Acquisition Corp.*, 901 F. 3d 1307, 1314

---

[10] Schrier states that QIB has "three categories" of minimum contacts with the United States, consisting of (1) correspondent accounts, (2) the alleged conspiracy, and (3) alleged conduct aimed at the United States which caused effects here. *See* Appellant's Br. at 24, 39. This latter category is inextricably linked to the conspiracy theory of jurisdiction, as Schrier does not allege any conduct *by QIB* that was aimed at or caused effects in the United States beyond its alleged role in the alleged conspiracy.

(11th Cir. 2018)); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1033 (2021) (Alito, J., concurring).

Schrier overstates the significance of *Ford*. *Ford*, a stream-of-commerce case, held that while "a strict causal relationship between the defendant's in-[forum] activity and the litigation" is not required, 'the phrase 'relate to' incorporates real limits," and that "does not mean anything goes." *Ford*, 141 S. Ct. at 1026; *see also Herederos*, 43 F.4th at 1310-11 (citing *Ford*). Even under *Ford*'s less stringent standard, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [] and is therefore subject to the [forum's] regulation." *Ford*, 141 S. Ct. at 1025 (cleaned up). The "relationship among the defendant, the forum, and the litigation— the essential foundation of specific jurisdiction"—must still be "strong." *Id*. at 1028; Dkt. 182 at 33. That "strong" relationship is entirely lacking here. *Ford* certainly did *not* consider, much less hold, that a foreign defendant's forum contacts *after* the events relating to a plaintiff's claims could support the exercise of personal jurisdiction. Rather, *Ford* distinctly considered jurisdiction "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents." 141 S. Ct. at 1022. In that regard, causation was a critical element of the jurisdictional inquiry, as the product caused the injury. *See*

*Ford*, 141 S. Ct. at 1026-27. Here, unlike in *Ford*, Schrier's claims cannot plausibly be said to arise out of or relate to QIB's remote and attenuated U.S. contacts.

### 1.    QIB's New York Correspondent Accounts Cannot Support Specific Jurisdiction

The only direct contacts that Schrier alleges QIB has had with the United States are with New York through the maintenance of its correspondent accounts. Courts have consistently held that the mere maintenance of correspondence accounts is insufficient to establish minimum contacts with the United States. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013) (merely providing financial services to an entity that carries out a terrorist attack is insufficient for personal jurisdiction); *Vasquez v. Hong Kong and Shanghai Banking Corp., Ltd*., 477 F. Supp. 3d 241, 258 (S.D.N.Y. 2020) (three transactions through a correspondent account were "too sparse" to warrant inference of purposeful availment); *Tamam*, 677 F. Supp. 2d at 731-32 ("The mere maintenance of a correspondent account in New York no more establishes minimum contacts with the United States than it does provide a basis for the exercise of long-arm jurisdiction"; plaintiffs' injuries were "not substantially related to the U.S. correspondent accounts such that their claims arise from the alleged currency transfers").[11] Where there are no correspondent

---

[11] Schrier agrees that "the 'mere maintenance of a correspondent account,' without any transactions related to a terrorist group, cannot create a relationship that establishes jurisdiction." Appellant's Br. at 32. Yet, Schrier failed to rebut the
(Continued...)

account transactions that plausibly *relate to* or *give rise to* Schrier's claims, the exercise of specific personal jurisdiction cannot comport with due process.

The district court correctly found that Schrier could not plausibly allege that any of QIB's contacts with New York—through correspondent account transactions—facilitated or otherwise related to his alleged kidnapping or detention. Dkt. 182 at 35-36. This was particularly true because jurisdictional discovery established that there were *no* transactions concerning al-Kabi and only three transactions concerning Qatar Charity before Schrier's alleged escape, and these three transactions clearly have no relation to Schrier's claims. They consist of:

| Date | USD Amt | Originator | Beneficiary | Correspondent Bank | Description |
|---|---|---|---|---|---|
| ████████ | | ███████████████ | | | ██ █ |
| | | | ████ ████ | ██████████████ | |
| | | | ███ ████ | | ████ |
| | | | ████ | | ████ |
| ███████ | | ███████ ██ | ████ ████ | | |
| | | | ████████ | ████ | |

_____

evidentiary record that the transactions benefitted legitimate organizations and establish that the transactions benefitted the Nusra Front or Ahrar al-Sham.



Dkt. 156-2, Exhs. A-C. As the district court explained, while Schrier does not need to show that these transactions *caused* his kidnapping and detention, he does need to be able to show "a relationship between [QIB's] conduct within [the United States] and the cause of action." Dkt. 182 at 35 (quoting *Herederos*, 43 F.4th at 1311); *see also Ford*, 141 S. Ct. at 1028. But Schrier makes no attempt to explain how these three transactions could possibly "relate to" his claims, nor does the Second Amended Complaint even allege that they do. *See* Dkt. 182 at 35-36.

Further, the district court observed that the only evidence pertaining to these three transactions was submitted by QIB and found as a matter of fact that the evidence "unambiguously suggest[s] that these transfers went to *legitimate* organizations", *Id.* at 37 (emphasis in original), "strongly suggests that the three transactions . . . have nothing to do with Schrier's captivity", *id.* at 38, and "unambiguously indicates that all three [transactions] funded legitimate organizations." *Id*. at 38 n.19; *see also id*. at 41 ("QIB has shown, with competent evidence, that even these three [routine financial transactions] had nothing to do with terrorism generally—or Schrier's captivity specifically[, . . .] and Schrier has failed

to parry QIB's evidence with any proof of his own[.]").[12] The district court's factual findings were supported by the evidence, and Schrier has failed to establish any clear error that would permit any other conclusion.[13]

The last three transactions occurred *after* Schrier had already escaped his alleged captivity, with his detention ending on July 29, 2013. Dkt. 149, ¶ 42; Dkt. 182 at 35. The three post-escape transactions were:

| Date | USD Amt | Originator | Beneficiary | Correspondent Bank | Description |
|------|---------|-----------|-------------|--------------------|-----------|
| ███ | ███ | ███████ | ███ | ██████ | ██████ |
|  |  |  |  | ██ | ████ |
|  |  |  |  |  | ████ |

---

[12] With the submission of evidence, the burden shifted back to Appellant, but he failed to produce any evidence of his own. *See e.g., Internet Sols. Corp v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009); *Scultpchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). While the district court agreed that all conflicts should be construed in Schrier's favor, it observed that that rule applied only when evidence was actually in conflict. Dkt. 182 at 38 n.19. Because Schrier failed to submit any evidence of his own, there was no evidentiary conflict to be resolved. *Id*; *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257.

[13] Schrier *agrees* that the evidence shows the transactions benefitted legitimate organizations. Appellant's Br. at 30 ("To be sure, as the district court found, transaction documents for three pre-escape transactions suggest those transactions benefitted 'legitimate organizations.'").

(Continued...)



Dkt. 156-2, Exhs. D-F. Only the last transaction, ██████████████████ is

identified in the Second Amended Complaint, ████████████████████████

████████████████████████████████████[14] Dkt. 149, ¶ 230.

Contacts with the United States that occur after the events giving rise to a plaintiff's

claims cannot support the exercise of specific personal jurisdiction, which

fundamentally requires that the claims "arise out of or relate to" the defendant's

contacts with the forum. *Louis Vuitton*, 736 F.3d at 1355. Schrier does not cite a

single authority that would support specific personal jurisdiction based on contacts

*after* the events on which a plaintiff's claims are based.

---

[14] Schrier's characterization that this transaction "flowed from a Saudi account to
the account of Saad al-Kabi [. . .] the designated terrorist supporter[,]" is misleading.
Appellant's Br. at 26. First, the holder of the account in question ████████████████
████████████████████████████████████████████████████████████████████
Dkt. 149, ¶¶ 4, 8, 115, 153. Second, Saad bin Saad al-Kabi was not a designated
terrorist supporter at the time of this transaction; he was not designated until nearly
two years later, in August 2015. *Id.*, ¶ 111.
(Continued...)

Even if post-escape contacts with a single state were relevant to the Rule 4(k)(2) specific personal jurisdictional analysis, the transfer documents produced during jurisdictional discovery do not reflect that any of these funds were transferred to or benefited any terrorist organization, or that they contributed to or related to Schrier's alleged kidnapping and detention in Syria.[15] *See* Dkt. 149, ¶ 232; Dkt. 156-2, Exhs. F, I. This Court has held that where there's a "tenuous relationship" between the injury and the contacts, a finding that the relatedness requirement has been satisfied "would not only contravene the fairness principles that permeate the jurisdictional due process analysis, but would also interpret the requirement so broadly as to render it virtually meaningless." *Oldfield*, 558 F.3d at 1223-24. Such is the case here. Even if there were a relationship (and there is not), it would be far "too attenuated" to support specific personal jurisdiction. *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 535 F. Supp. 3d 1299, 1306 (S.D. Fla. Apr.

---

[15] Schrier argues that post-escape transactions represent a "continuation of QIB's overall course of conduct" but he has not and cannot actually demonstrate any such pattern because, as discussed above, the pre-escape transactions also prove his allegations to be untrue. The allegation that a transfer to ███████████ ███████████████████████████████████████████████████ ██████████ (Dkt. 156-2, Exhs. A-C) ███████████████████████████████████ Jurisdictional discovery instead established a complete absence of the types of transactions that Schrier alleges without specificity. As with the three pre-escape transactions, Schrier failed to submit any evidence that would rebut QIB's evidence. *See Internet Sols.*, 557 F.3d at 1295; *Scultpchair, Inc.*, 94 F.3d at 627. The Court cannot and should not draw the unreasonable inferences that Schrier requests.

27, 2021), *aff'd* 43 F.4th 1303 (11th Cir. 2022); *see also Vasquez*, 477 F. Supp. 3d at 258 (holding that three transactions through a correspondent account were "too sparse" to warrant inference of purposeful availment). Given the lack of any evident relationship between the post-escape transactions and Schrier's claims, the district court properly disregarded them. Dkt. 182 at 35, 48.

Schrier's reliance on *Licci* and *Weiss* is therefore misplaced. Specifically, both cases dealt with the application of the New York long-arm statute, not Rule 4(k)(2), and both included robust allegations of continuous and repeated transactions that directly related (and contributed) to the harms alleged. *See* Appellant's Br. at 28; *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013); *Weiss v. Nat'l Westminster Bank, PLC*, 176 F. Supp. 3d 264 (E.D.N.Y. 2016). In *Licci*, the defendant's New York correspondent account executed "*dozens* of dollar denominated wire transfers" that were "a part of the principal wrong at which the plaintiffs' lawsuit [was] directed[.]" *Licci*, 732 F. 3d at 170 (emphasis added). These transfers were for millions of dollars and were not "random, isolated, or fortuitous." *Id*. at 171 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). The Second Circuit therefore concluded that "the selection and repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress," supported the exercise of jurisdiction under the New York long-arm statute. *Id*. Likewise, in

*Weiss*, the defendant executed 196 transfers that allegedly contributed to the attacks that injured plaintiffs through its correspondent accounts and New York branch to fronts for Hamas. *Weiss*, 176 F. Supp. at 271. These transfers were not just "once or twice by mistake," nor were they executed "at a time far removed from the attacks that caused Plaintiffs' injuries." *Id.* at 279; *see also id.* at 280 (noting the first transfer was in 1996 and the last was in 2003, which overlapped with the attacks in 2002 and 2004 that caused plaintiffs injuries). Representing more than $4 million, these "transfers by no means were *de minimis*." *Id.* at 280.

In contrast, Schrier does not identify *any* transaction made through QIB's correspondent accounts that was used as "an instrument for accomplishing" his kidnapping or detention, the alleged wrongs for which he seeks redress. *Licci*, 732 F. 3d at 171. The only transaction he identifies was ████████████████████ ███████████████████████████████████████████████████████████████. Dkts. 149, ¶ 230; 156-2, Exh. F. Schrier's argument that the transfer he identifies does not need to correspond to his injuries is misleading. Appellant's Br. at 43. In *Schansman v. Sberbank of Russia PJSC*, the court considered whether it had personal jurisdiction over defendant banks under the New York long-arm statute. *Schansman v. Sberbank of Russia PJSC*, 565 F. Supp. 3d 405 (S.D.N.Y. 2021). While the court stated that for personal jurisdiction, ATA claims do not necessarily have to correspond one-to-one with particular transfers, there still must be a connection

between the transfers and the events on which a plaintiff's claims are based. For example, a court may rely on "the *millions of dollars*" that were allegedly transferred to the terrorist organizations in close temporal proximity to the attack.[16] *Id*. at 413 (emphasis added) (quoting *Straus v. Credit Lyonnais, S.A.,* 175 F. Supp. 3d 3, 24 (E.D.N.Y. 2016)).[17] That is a significant departure from the facts present here, where Schrier relies entirely ████████████████████████████████.

Lastly, Schrier argues that QIB's refusal to answer certain questions during its 30(b)(6) deposition is "evidence" that there is some "relationship between these five [Qatar Charity] transactions and Schrier's claims." Appellant's Br. at 31. As discussed in greater detail in Section IV, this too is unavailing. A court cannot grant a request for an adverse inference that is *directly contradicted* by the evidence produced during discovery, which included all documents concerning the transactions. The district court considered whether these transactions were related to Schrier's claims, and correctly found, based on the evidence presented, that they were not.

---

[16] The *Schansman* plaintiffs identified and relied upon specific transfers that occurred within a month or two *before* the attack at issue. *Schansman v. Sberbank of Russia PJSC*, No. 19-cv-02985-ALC (S.D.N.Y), Second Amended Complaint, ¶ 57 [Dkt. 156].

[17] In *Strauss*, the court determined that millions of dollars in transfers *leading up to* the attacks for which plaintiffs sought redress could be used as a basis to exercise personal jurisdiction under the New York long-arm statute. *Straus v. Credit Lyonnais, S.A.,* 175 F. Supp. 3d 3, 23-24 (E.D.N.Y. 2016).

Still, Schrier argues that this Court should consider *uncontroverted* facts, and that the district court could not ignore "*undisputed* facts." Appellant's Br. at 31-32 (quoting *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc)) (emphasis added). But the district court did not ignore undisputed and uncontroverted facts. QIB wholly disputes and has submitted evidence which controverts the allegation that its correspondent account transactions relate in any way to Schrier's claims and the harm he alleges. *See* Dkt. 156-2, Exhs. A-F, I. Schrier's assertion that the district court "clearly erred" in holding that there was no evidence that the transactions supported Syrian terrorism is manifestly false. Appellant's Br. at 32. The district court's factual finding that these transactions had "nothing to do with terrorism generally—or Schrier's captivity specifically" is supported by the evidentiary record. Dkt. 182 at 41; *see also id*. at 8-9, 37-38, 44.

### 2.     The district court correctly rejected a theory of conspiracy-jurisdiction under Rule 4(k)(2)

Schrier also argues that his unsupported and conclusory allegations of a "conspiracy" between QIB and the terrorists who kidnapped him satisfies the minimum contacts analysis. This is because, he asserts, the terrorists' conduct in kidnapping and detaining Schrier in Syria was directed at the United States, and had effects here. Appellant's Br. at 32, 37-38.

### a.    Conspiracy jurisdiction is not cognizable under Rule 4(k)(2)

As an initial matter, "Rule 4(k)(2) does not permit the exercise of conspiracy-based jurisdiction." *Oueiss v. Saud*, No. 1:20-CV-25022-KMM, 2022 WL 1311114, at *19 (S.D. Fla. Mar. 29, 2022) (citation omitted). In keeping with "just about every other federal court to have addressed this issue[,]" the district court held that Rule 4(k)(2) does not countenance a conspiracy-based theory of personal jurisdiction in light of the Supreme Court's clear guidance on what due process in this context requires. Dkt. 182 at 47; *see Walden v. Fiore*, 571 U.S. 277, 284 (2014) (holding that to comport with due process, a defendant's relationship with the forum "must arise out of contacts that the defendant *himself* creates with the forum[.]") (cleaned up & emphasis in original) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection with the forum[.]'") (emphasis in original)). Indeed, "[n]o federal court in the country" has "*ever* applied a conspiracy-based theory of jurisdiction under Rule 4(k)(2)." Dkt. 182 at 46 (emphasis in original); *see also id.* at 44 (collecting cases not permitting the exercise of conspiracy-based jurisdiction under Rule 4(k)(2)).

Schrier argues that because various state long-arm statutes permit the exercise of conspiracy-based jurisdiction, so too must Rule 4(k)(2). Appellant's Br. at 33-34.

But in its Order, the district court clearly distinguished Rule 4(k)(2), which does not support conspiracy-based jurisdiction in part because it focuses its language entirely on the *defendant*, without regard for the contacts of others, from various state long-arm statutes, which often explicitly permit conspiracy-based jurisdiction through their plain language. Dkt. 182 at 47 (comparing language of Fed. R. Civ. P. 4(k)(2) with Fla. Stat. § 48.193(1)(a)). The district court's interpretation was correct. Indeed, *no* federal court has ever applied a conspiracy-based theory of jurisdiction under Rule 4(k)(2). This Court should not be the first.

> **b.    Schrier has not alleged a *prima facie* case for conspiracy-based jurisdiction**

Even if specific personal jurisdiction under Rule 4(k)(2) could be exercised on the basis of an alleged co-conspirator's acts, the allegations present here would not suffice. Schrier has failed to make a *prima facie* case for jurisdiction on this basis. Schrier has provided only conclusory and unsupported allegations that QIB entered into any conspiracy with the Nusra Front.[18] These allegations are wholly insufficient.

---

[18] A plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, "where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, L. Ed. 2d 929 (2007)). The court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by (Continued...)

For instance, Schrier alleges that "QIB became part of this agreement when it opened an account for al-Kabi to fundraise for the Nusra Front, all while knowing of al-Kabi's Nusra Front affiliation and his purpose in opening the account." Appellant's Br. at 36; Dkt. 149, ¶¶ 111-22. But Schrier provides nothing beyond conclusory (and implausible) allegations that unspecified "due diligence" provided QIB with knowledge in 2013 that al-Kabi—who would not be designated for his association with the Nusra Front until August 2015—was associated with the Nusra Front, and the (equally implausible and unsupported) allegation that by providing routine financial services to the person Schrier alleges to be al-Kabi's son, QIB somehow joined in a conspiracy to support to terrorism. Dkt. 149, ¶¶ 42, 111, 115, 120-22, 257. Schrier's conclusory and factually unsupported allegations cannot and should not provide a basis for the novel application of conspiracy jurisdiction under Rule 4(k)(2).

### c.    The 'effects test' is inapplicable under either approach

Schrier argues that the Nusra Front's activities were expressly aimed at the United States, and that the effects of these activities were felt in the United States. Schrier further alleges that the Nusra Front's torts should be imputed onto QIB (vis-à-vis the alleged conspiracy) to create jurisdiction, or alternatively that QIB's alleged

---

mere conclusory statements." *Id*. at 678 (citation omitted).

"support" for the terrorist organizations responsible for his kidnapping and detention was conduct that QIB itself has directed at the United States. Appellant's Br. at 32, 37, 39, 42. This latter alleged conduct is the same conduct that Schrier alleges made QIB a party to the conspiracy. *See* Appellant's Br. at 40 ("QIB knowingly provided financial services to the Nusra Front via the al-Kabi account. QIB should be subject to jurisdiction for the effects of its knowing conduct.") (internal citations omitted).

The 'effects test' is inapplicable under either approach. While the effects test has sometimes been sufficient to establish minimum contacts in instances where a foreign defendant is a primary participant in a terrorist attack, that is not the case here. Schrier does not allege that QIB was a direct participant in his alleged kidnapping and detention, or that QIB directed *any* suit-related activities at the United States beyond those alleged in New York.

The district court properly and thoroughly distinguished the cases upon which Schrier relies to show that the 'effects test' has been used as the basis for exercising personal jurisdiction, including *Mwani*, *Morris*, and *Wultz*, from the facts present here. *See* Dkt. 182 at 39-44; *Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005) (finding personal jurisdiction over bin Laden and al-Qaeda where they directly engaged in the activities subjecting them to personal jurisdiction, including extensive and "overt acts occurring within this country's borders."); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1326-27, 1336 (D. Utah 2006) (personal jurisdiction

37

asserted over longtime member of al-Qaeda who served in key leadership roles within the organization, who provided extensive and material support, including financial and personnel support, planning of its terrorist agenda, and even encouraged his own son to join in the attacks against Americans); *Wultz v. Islamic Rep. of Iran*, 755 F. Supp. 2d 1, 19, 34-36 (D.D.C. Oct. 20, 2022) (distinguishing "the mere provision of routine banking services that benefited a terrorist organization in some general, nondescript manner" which would "not support a finding of specific jurisdiction" with factually supported allegations that the bank knew its dozens of transfers totaling millions of dollars were enabling terrorists after Israeli officials informed the government, which in turn informed the bank, as supporting a finding of specific jurisdiction).

As the district court explained, these cases are in stark contrast to the facts presented here. Dkt. 182 at 41 ("Our case (it almost goes without saying) is totally different."). Specifically, the district court pointed out that Schrier is suing a Qatari bank (not the terrorists who injured him); he identified only three routine financial transactions preceding his escape (not the dozen or more acts of terrorism the *Mwani* defendants indisputably directed at the United States, or the attack that the *Morris* defendant had launched against the U.S.), which QIB has demonstrated, with competent and unrefuted evidence, are unrelated to his claims and to terrorism generally (unlike the *Mwani* and *Morris* plaintiffs, who supplemented allegations

38

with "extremely inculpatory evidence of the defendants' U.S.-directed activities" or the *Wultz* plaintiffs, who alleged specific facts and did not rely on conclusory allegations). *Id*.

### C.    The Exercise of Rule 4(k)(2) Jurisdiction Over QIB Would Be Inconsistent with the United States Constitution

Rule 4(k)(2) requires that the "exercise of jurisdiction be consistent with the United States Constitution[.]" Dkt. 182 at 31; Fed. R. Civ. P. 4(k)(2)(B). As this Court has provided, "[j]urisdiction 'consistent with the Constitution and laws of the United States' is that which comports with due process." *Consolidated Dev.*, 216 F.3d at 1291. To comport with due process, the non-resident defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *See e.g.*, *Helicopteros Nacionales de Colombia S.A.,* 466 U.S. at 414; *Fraser*, 594 F. 3d at 850; *Oldfield*, 558 F.3d at 1220.

As described *supra*, QIB does not have sufficient minimum contacts with the United States to support the exercise of Rule 4(k)(2) jurisdiction[19] where the only contacts Schrier alleges—correspondent account transactions through a single state—have been proven by competent evidence to be unrelated to Schrier's claims,

---

[19] Nor does QIB have sufficient minimum contacts with *any* state that would support the exercise of jurisdiction under any other basis.
(Continued...)

and where conspiracy-based jurisdiction is not cognizable under Rule 4(k)(2).[20] *See* Dkt. 182 at 8-9, 37-38, 41, 44-48. Despite Schrier's assertion otherwise, neither the purposeful availment or relatedness prongs have been satisfied. Appellant's Br. at 44. The district court correctly held that because Schrier failed to show that QIB's contacts with the United States were "related" to his claims, its analysis need not reach whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.[21] Dkt. 182 at 49 n.22. This is because without those minimum contacts, the maintenance of the suit necessarily offends the traditional notions of fair play and substantial justice. *See Fraser*, 594 F. 3d at 850.

## III. THE FLORIDA LONG-ARM STATUTE DOES NOT CONFER JURISDICTION OVER QIB

The district court also correctly rejected Schrier's argument that the Florida Long-Arm Statute provides a basis for the exercise of specific personal jurisdiction over QIB. Schrier has argued that "QIB is subject to jurisdiction [in Florida] because

---

[20] Even if conspiracy-based jurisdiction theoretically could be cognizable under Rule 4(k)(2), Schrier failed to establish any conspiracy, much less a conspiracy that would constitute contacts sufficient to comport with traditional notions of fair play and substantial justice in any exercise of specific personal jurisdiction.

[21] Even if the correspondent accounts were "related" to Schrier's claims—which the district court found they were not—this would be insufficient to establish that the exercise of jurisdiction under Rule 4(k)(2) would comport with traditional notions of fair play and substantial justice because Schrier has taken the position that these transactions are insufficient to subject QIB to the jurisdiction of New York's courts of general jurisdiction and he has not alleged that QIB has any contacts in any other states in the United States.

the Nusra Front would be." Appellant's Br. at 48-49; Dkt. 158 at 2. As the district

court accurately recited, the Florida Long-Arm Statute could confer jurisdiction over

QIB under a 'co-conspirator' theory of jurisdiction only if:

> (1) [J]urisdiction can, under the traditional tests . . ., be asserted over a 'resident' defendant (*i.e.* one with sufficient ties to the state); (2) the plaintiff can demonstrate the existence of a conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act in furtherance of the conspiracy took place within the state.

Dkt. 182 at 23 (quoting *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09–23248–CIV, 2011 WL 5057203, at *4 (S.D. Fla. Oct. 24, 2011) (Huck, J.)).

Schrier's allegations do not meet any of these requirements.[22] As an initial

matter, Schrier failed to demonstrate the existence of the alleged conspiracy. QIB

submitted evidence that the financial transactions in question did not involve the

Nusra Front, Schrier failed to present any evidence that would refute this, and Schrier

admits that al-Kabi was not a designated supporter of the Nusra Front until August

2015, two years after Schrier escaped. *See* Dkt. 156-2, Exhs. A-F, I; Dkt. 149, ¶ 111.

Schrier failed to make a "colorable, factually supported claim of the conspiracy's

existence" to rebut that evidence as required. *Hasenfus v. Secord*, 797 F. Supp. 958,

---

[22] Nor did Schrier actually plead a cause of action for civil conspiracy or conversion. Dkt. 182 at 23, 27.

962 (S.D. Fla. 1989) (Plaintiff cannot merely "repeat[] the allegations contained in the complaint").

Schrier also failed to allege that the purported tortious conduct—conversion—occurred *in Florida* as required by the Florida Long-Arm Statute. Dkt. 182 at 24; Fla. Stat. § 48.193(1)(a)(2); Dkt. 149, ¶¶ 74-75. Under Florida law "the relevant act for personal jurisdiction purposes with regard to the tort of conversion is the initial wrongful deprivation."[23] *Russo v. Fink*, 87 So. 3d 815, 818 (Fla. 4th DCA 2012); *see also Merkin v. PCA Health Plans of Fla., Inc.*, 855 So. 2d 137, 140 (Fla. 3d DCA 2003) ("A tort claim is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place.") (alteration, internal quotation marks, and citation omitted). Based on the facts alleged, the alleged conversion took place in Syria, as that is the location that the Nusra Front allegedly completed its "wrongful exercise of dominion and control" over Schrier's property. *Merkin*, 588 So. 2d at 140; Dkt. 149, ¶¶ 74-75; Dkt. 182 at 25.

---

[23] Schrier's reliance on *Gisclair* is misplaced. *Gisclair* considers the "continuous" nature of conversion for the purposes of venue, *not* jurisdiction. *See Intercapital Funding Corp v. Gisclair*, 683 So. 2d 530, 532 (Fla. 4th DCA 1996) ("if the property converted has been taken from one county to another, it may be said to have been committed in either county *for purposes of venue*.") (quoting *Martin v. Kuhl,* 528 So. 71-72 (Fla. 4th DCA 1988) (emphasis added)); *cf. Russo*, 87 So. 3d at 818 ("[T]he relevant act *for personal jurisdiction purposes* with regard to the tort of conversion is the initial wrongful deprivation.") (emphasis added).

Finally, Schrier's claims fundamentally do not "*arise from* the alleged conversion." Dkt. 182 at 27 (emphasis in original). As this Court has repeatedly held, under the Florida Long-Arm Statute, a plaintiff's lawsuit must *arise primarily out of an in-state act enumerated in the statute. See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 787 (11th Cir. 2014) ("In other words, 'the activities in Florida [must be] essential to the success of the tort.'") (quoting *Williams Electric v. Honeywell, Inc.* 854 F.2d 389, 394 (11th Cir. 1988)); Fla. Stat. § 48.193 (providing jurisdiction for "any cause of action *arising from*" the enumerated acts) (emphasis added). Schrier brought twelve causes of action against QIB arising out of his alleged kidnapping and detention by the Nusra Front in Syria. As the district court correctly stated, these causes of action do not arise out of the subsequent conversion of his credit cards. Dkt. 182 at 28.  Nor does Schrier allege that the two purchases from Florida vendors—for window washing fluid and sunglasses—were used for his kidnapping and detention, or for furthering his detention. Dkt. 149, ¶¶ 74-75. Therefore, Schrier failed to establish personal jurisdiction over QIB under the Florida Long-Arm Statute. Dkt. 182 at 28.

## IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING SCHRIER'S REQUEST FOR SANCTIONS

Schrier's argument that the district court's dismissal should be reversed due to QIB's alleged discovery misconduct is based on a fundamental misapprehension that the district court did not rule on his request for sanctions. Schrier speculates that

43

the district court did not consider his request based merely on the fact that the district court did not expressly address the request in its order determining that it lacked personal jurisdiction over QIB. However, unlike the cases on which Schrier relies, he has failed to establish that the district court did not consider his request.

Schrier concedes that the district court had complete discretion to decide whether to grant his request for sanctions. *See* Appellant's Br. at 50. Issues related to discovery disputes are reviewed for abuse of discretion. *Lee v. Etowah Cnty. Bd. of Educ.*, 963 F.2d 1416, 1420 (11th Cir. 1992) (discovery ordered reviewed for abuse of discretion); *Baker v. St. Paul Travelers Ins. Co.,* 670 F.3d 119, 122 (1st Cir. 2012) (discovery orders, including the denial of a motion for discovery sanctions, are reviewed for abuse of discretion); *Security Nat'l Bank of Sioux City v. Day*, 800 F.3d 936, 941 (8th Cir. 2015) (same). Here, the district court did not abuse its discretion by denying Schrier's untimely request for discovery sanctions.

The district court was not obligated to explain its reasons for denying Schrier's untimely request for discovery sanctions. Schrier improperly brought this issue before the district court for the first time in his Opposition to Defendant's Motion to Dismiss. Dkt. 158 at 19-20. There is no authority that requires a district court to expressly address everything a plaintiff argues in an opposition to a motion to dismiss. Schrier cites only two cases to support his position. *See* Appellant's Br. at 50-51, citing *Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019), and *LSLJ*

*Partnership v. Frito-Lay, Inc.*, 920 F.2d 476 (7th Cir. 1990). Neither case supports his position.

First, neither case deals with discovery sanctions, and neither case involves a discovery motion raised for the first time in opposition to a dispositive motion. In both cases, the abuse of discretion resulted from the lower court's erroneous statements that it was not permitted to rule on a question of law. In *Showan*, the district court abused its discretion because it "erroneously concluded it had no discretion" to decide whether a unit-of-time argument was allowable under the law. *See* 922 F.3d at 1220. Similarly, in *LSLJ Partnership*, the district court abused its decision when it declined to rule on the merits of a Rule 60(b) motion because the court erroneously believed that it had no jurisdiction to do so. *See* 920 F.2d at 479. These cases found an abuse of discretion because the courts made it clear on the record that they were *not* ruling on the motion based on the erroneous belief that they could not do. Here, however, Schrier has not pointed to any record evidence that the district did not believe it could rule on a sanctions motion and therefore declined to do so.

Although Schrier is not asking this Court to rule on the merits of his sanctions request, the remainder of Schrier's argument focuses on his belief that the district court "had a basis for sanctions." Appellant's Br. at 51. To the contrary, such a basis is lacking for two reasons: 1) QIB did not improperly refuse to answer merits-based

45

discovery questions, and 2) Schrier failed to properly and timely exercise any right to compel responses to those questions before seeking an adverse inference.

On September 30, 2020, the district court granted QIB's first motion to dismiss and granted Schrier's *ore tenus* request for limited jurisdictional discovery. Dkt. 74. Schrier deposed QIB's 30(b)(6) representative on September 23, 2021. Schrier improperly exceeded the scope of jurisdictional discovery and sought merits-based discovery throughout the deposition. QIB properly exercised its right not to answer those questions because they transgressed the discovery limitations ordered by the district court. As explained by the court in *Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 316 (N.D. Fla. 2021), a case cited in Schrier's brief, "[a] person may instruct a deponent not to answer . . . to enforce a limitation ordered by the court." QIB properly instructed the witness not to answer deposition questions that exceeded the scope of jurisdictional discovery—a limitation ordered by the district court—in both time and topic pursuant to Rule 30(c)(2). *See Klayman v. Fitton*, No. 19-20544-CIV-MARTINEZ/AOR, 2019 WL 11505348, at *1-2 (S.D. Fla. July 11, 2019) (Rule 30 permitted instructions not to answer deposition questions that exceeded the scope of jurisdictional discovery).

Though Schrier expressed disagreement with the objections, he did not move to compel answers. As the Federal Rules specify, when a witness fails to answer a question during a deposition, "the questioning party may subsequently *move to*

46

*compel* disclosure of the testimony that it sought." *Kelly v. A1 Tech.*, No. 09 CIV. 962 LAK MHD, 2010 WL 1541585, at *20 (S.D.N.Y. Apr. 12, 2010) (emphasis added); *Klayman*, 2019 WL 11505348, at *1; Fed. R. Civ. P. 37(a)(3)(B)(i). It was not until November 8, 2021, over a month after the deposition and after the close of jurisdictional discovery that Schrier referenced this issue in his Opposition to Defendant's Motion to Dismiss.[24]

If Schrier truly believed he was entitled to additional answers from QIB, it was incumbent on him to timely move to compel them commensurate with his obligations under S.D. Fla. Local R. 26.1(g), but he strategically chose not to. *See New World Network Ltd. v. M/V NORWEGIAN SEA*, No. 05-22916-CIV, 2007 WL 1068124, at *4 (S.D. Fla. Apr. 6, 2007) ("The requesting party has the *obligation* . . . to seek to compel additional answers if necessary, following the deposition.") (emphasis added). From discovery already produced, Schrier knew that any supplemental deposition of QIB would only further prove his allegations to be untrue. Instead, he waited until after the close of discovery, ignored his obligation to seek to compel discovery, and asked for an adverse inference under Rule 30(d).

---

[24] Local R. 26.1(g)(1) requires that "[a]ll disputes related to discovery shall be presented to the court by motion...within (30) days from the: (b) date of the deposition in which the dispute arose. The "Motion for Sanctions" was presented to the district court more than 45 days after the date of the 30(b)(6) deposition at issue.

Moreover, Schrier provided no precedent for drawing an adverse inference under Rule 30(d). The cases Schrier cites in support of his contention that courts have upheld sanctions that result in the exercise of personal jurisdiction are distinguishable from this case. *See* Appellant's Br. at 52, citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982); *D.J. Simmons, Inc. v. Broaddus*, No. CIV 99-1105 JP/LFG, 2000 WL 36739814 (D.N.M. June 21, 2000). Those cases involve sanctions under Rule 37, which is not at issue here. Unlike Appellant, the plaintiffs there sought to compel discovery and the defendants defied a court order necessitated by defendants' earlier unreasonable failure to respond to discovery. *See Ins. Corp. of Ireland*, 456 U.S. at 699; *D.J. Simmons*, 2000 WL 36739814, at *7. Here, QIB did not fail to comply with its discovery obligations, Schrier did not move to compel discovery, and QIB did not defy a court order compelling discovery.

Schrier request for an adverse inference based on QIB's refusal to respond to merits-based deposition questions was therefore frivolous. QIB properly refused to answer questions exceeding the discovery limitations ordered by the district court. Schrier failed to move to compel answers to those questions, and he raised an untimely and procedurally improper request for sanctions based on a strategic decision that seeking an adverse inference was more beneficial than compelling answers to the questions because those answers would reinforce the fact that his

allegations are false. Schrier's attempt now to obtain a remand is nothing more than a last-gasp effort to resurrect a claim that never had merit.

## CONCLUSION

The district court correctly concluded that it lacked personal jurisdiction over QIB. Despite having been afforded jurisdictional discovery, Schrier cannot show that the district court should have exercised personal jurisdiction. Rather, the evidence instead established that personal jurisdiction over QIB would be improper under all theories that Schrier advances. Nor can Schrier show that the district court abused its discretion in denying his motion for sanctions. For the foregoing reasons, QIB respectfully requests that this Court affirm thethe district court's Order Granting QIB's Motion to Dismiss the Second Amended Complaint.

Dated: March 1, 2023                    Respectfully submitted,

                                        /s/ *T. Michael Guiffre*
                                        T. Michael Guiffre (DC Bar No. 465745)
                                        Shawn C. Layman (FBN 48112)
                                        Leslie M. Castello (DC Bar No. 1735967)
                                        CROWELL & MORING LLP
                                        1001 Pennsylvania Ave NW
                                        Washington, DC 20004
                                        Telephone: (202) 654-6704
                                        Facsimile: (202) 628-5116
                                        mguiffre@crowell.com
                                        slayman@crowell.com
                                        lcastello@crowell.com

                                        Aryeh L. Kaplan (FBN 60558)
                                        Ariella J. Ederi (FBN 1002965)
                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                        600 Brickell Avenue, Suite 3100
                                        Miami, FL 33131
                                        Telephone: 786-913-4900
                                        Facsimile: 786-913-4901
                                        aryeh.kaplan@pillsburylaw.com
                                        ariella.ederi@pillsburylaw.com

                                        *Counsel for Appellee*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Fed. R. App. P. 32(a)(7), because this document contains 11,801 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f). This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ T. Michael Guiffre
T. Michael Guiffre

*Counsel for Appellee*

## CERTIFICATE OF SERVICE

I certify that on March 1, 2023, I filed the foregoing paper through the Court's CM/ECF system, which will automatically and electronically serve the paper on all counsel of record.

*/s/ T. Michael Guiffre*

T. Michael Guiffre
*Counsel for Appellee*