APPEAL NO. 22-13513-AA

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

MATTHEW SCHRIER,

APPELLANT,

v.

QATAR ISLAMIC BANK,

APPELLEE.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA, FORT LAUDERDALE DIVISION, NO. 20-CV-60075-RKA

---

APPELLANT MATTHEW SCHRIER'S REPLY BRIEF

---

John H. Rains IV
rains@bmelaw.com
Matthew R. Sellers
sellers@bmelaw.com
**Bondurant, Mixson & Elmore, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Tel: 404-881-4100
Fax: 404-881-4111


*Attorneys for Appellant Matthew Schrier*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, firms, partnerships, and corporations that are known to have an actual or potential interest in the outcome of this appeal:

1. Altman, Roy K. (United States District Judge – Southern District of Florida)

2. Baker, Emma (FOIA Counsel for Appellant)

3. Bondurant, Mixson & Elmore, LLP (Trial and Appellate Counsel Law Firm for Appellant)

4. Carroll, Kevin T. (Trial Counsel for Appellant)

5. Castello, Leslie M. (Counsel for Appellee)

6. Couriel, John D. (Former Trial Counsel for Appellant)

7. Crowell & Moring LLP (Trial & Appellate Counsel Law Firm for Appellee)

8. Ederi, Ariella J. (Former Counsel for Appellee)

9. Ghali, Kamal (Former Counsel for Appellant)

10. Guiffre, T. Michael (Counsel for Appellee)

11. Hulsey, G. Scott (Former Trial Counsel for Appellant)

12.      Hughes, Hubbard & Reed LLP (FOIA Counsel for Appellant)

13.      Kaplan, Aryeh Lev (Counsel for Appellee)

14.      Kobre & Kim, LLP (Trial Counsel Law Firm for Appellant)

15.      Lapointe, Markenzy (Former Counsel for Appellee)

16.      Layman, Shawn (Counsel for Appellee)

17.      McMullen, Patrick (Former Non-Litigation Counsel for Appellant)

18.      Pillsbury Winthrop Shaw Pittman LLP (Trial and Appellate Counsel Law Firm for Appellee)

19.      Qatar Islamic Bank (Appellee)

20.      Rains IV, John H. (Counsel for Appellant)

21.      Salinas, Alexander A. (Former Trial Counsel for Appellee)

22.      Schrier, Matthew (Plaintiff-Appellant)

23.      Sellers, Matthew R. (Counsel for Appellant)

24.      Sparacino PLLC (Non-Litigation Counsel for Appellant)

25.      Sparacino, Ryan R. (Non-Litigation Counsel for Appellant)

26.      Squire Patton Boggs, LLP (Former Trial Counsel Law Firm for Appellant)

27.      Tendler, Carrie A. (Trial Counsel for Appellant)

28.      Thompson, Donald L. (Former Trial Counsel for Appellee)

29.      Weiss, Jonathan R. (Former Trial Counsel for Appellee)

30.      Wiggin & Dana, LLP (Former Trial Counsel Law Firm for Appellant)

Matthew Schrier is an individual and thus does not have any parent corporations or publicly held or traded corporations to disclose.

# TABLE OF CONTENTS

ARGUMENT ..................................................................................1

I.   QIB misreads the ATA nationwide service provision, which
     authorized Schrier to serve QIB's Patriot Act agent in New York...........1

II.  QIB concedes that it was properly served in Qatar under
     Rule 4(f). ...........................................................................6

III. The ATA and Rule 4(k)(2) provide statutory bases for jurisdiction
     consistent with due process. .................................................7

     A.  QIB is subject to jurisdiction based on New York
         correspondent account transactions. ..............................8

     B.  QIB is subject to jurisdiction because of its conspiracy with
         the Nusra front and Ahrar al-Sham. ...............................14

     C.  QIB is subject to jurisdiction based on the in-forum effects of
         its conduct. ............................................................17

     D.  Schrier preserves his claim that the Fifth Amendment sets
         different personal jurisdiction requirements than the
         Fourteenth Amendment. ..............................................18

IV.  The Florida Long-Arm Statute confers jurisdiction .......................19

V.   This Court should remand for the district court to rule on
     Schrier's sanctions request. ..................................................21

CONCLUSION..............................................................................26

i

# TABLE OF AUTHORITIES

CASES:

*Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C.*,
   9 So. 3d 651 (Fla. 4th DCA 2009) .............................................................. 20

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...................................................................................... 13

*Caiazzo v. Am. Royal Arts Co.*,
   73 So.3d 245 (Fla. 4th DCA 2011)............................................................... 21

*Chalwest (Holdings) Ltd. v. Ellis*,
   924 F.2d 1011 (11th Cir. 1991)...................................................................... 22

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ...................................................................... 15, 16

*Citicorp. Ins. Brokers (Marine), Ltd. v. Charman*,
   635 So.2d 79 (Fla. 1st DCA 1994)................................................................ 21

*Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de
Chihuaha S.A.B. de C.V.*, 970 F.3d 1269 (10th Cir. 2020)........................... 13

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
   46 F.4th 226 (5th Cir. 2022) ......................................................................... 19

*Eastman Kodak Co. v. S. Photo Mats. Co.*,
   273 U.S. 359 (1927) ........................................................................................ 5

*Ford v. Montana Eighth Judicial District Court*,
   141 S. Ct. 1017 (2021) ......................................................................... 8, 11, 13

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983)................................................................. 16, 17

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) ......................................................................... 13

i

*Intercapital Funding Corp. v. Gisclair*,
    683 So.2d 530 (Fla. 4th DCA 1996) ............................................................ 20

*Kaplan v. Central Bank of Iran*,
    No. 10-cv-483, 2019 WL 2103424 (D.D.C. May 14, 2019) .......................... 2

*Kerr v. Port Huron Sulphite & Paper Co.*,
    157 F. Supp. 685 (D.N.J. 1957) ..................................................................... 4

*Koch v. Royal Wine Merchs., Ltd.*,
    907 F. Supp. 2d 1332 (S.D. Fla. 2012) ........................................................ 17

*Kyko Global, Inc. v. Prithvi Info. Sols, Ltd.*,
    No. 2:18-cv-1290, 2020 WL 3654951 (W.D. Pa. July 6, 2020) ................... 14

*Lee v. Wash. Cty. Bd. of Educ.*,
    682 F.2d 894 (11th Cir. 1982) ...................................................................... 22

*Lewis v. Mutond*,
    62 F.4th 587 (D.C. Cir. 2023) ...................................................................... 19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) ......................................................................... 13

*Lilly v. Bronson*
    177 So. 218 (Fla. 1937) ................................................................................ 20

*Macklin v. Singletary*,
    24 F.3d 1307 (11th Cir. 1994) ................................................................ 22, 24

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) .............................................................. passim

*Morris v. Khadr*,
    415 F. Supp. 2d 1323 (D. Utah 2006) .................................................... 17, 18

*Mwani v. bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005) .................................................................... 17, 18

*Nat'l Bank v. Day*,
  800 F.3d 936 (8th Cir. 2015) .................................................................. 24

*New World Network Ltd. v. M/V Norwegian Sea*,
  No. 05-22916-CIV, 2007 WL 1068124 (S.D. Fla. Aril 6, 2007) ................. 24

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007) .................................................................. 13

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) ............................................................ 7, 12

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
  484 U.S. 97 (1987). ................................................................................ 5

*Posner v. Essex Ins. Co., Ltd.*,
  178 F.3d 1209 (11th Cir. 1999) ............................................................ 25

*Reed & Martin, Inc. v. Westinghouse Elec. Corp.*,
  439 F.2d 1268 (2d Cir. 1971) .................................................................. 3

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
  119 F.3d 935 (11th Cir. 1997)............................................................... 6,7

*Sandalwood Estates Homeowner Ass'n, Inc. v. Empire Indem. Ins. Co.*,
  No. 09-cv-807487, 2010 WL 411088 (S.D. Fla. Jan. 29, 2010) ................. 24

*SEC v. Carrillo*,
  115 F3d 1540 (11th Cir. 1997) ................................................................ 8

*SEC v. Marin*,
  982 F.3d 1341 (11th Cir. 2020) .............................................................. 3

*Sellers v. Rushmore Loan Mgmt. Servs., LLC*,
  941 F.3d 1031 (11th Cir. 2019) ............................................................ 22

*Stanley Works v. Globemaster, Inc.*,
  400 F. Supp. 1325 (D. Mass. 1975); ........................................................ 4

*United States v. Hale*,
  422 U.S. 171 (1975) ................................................................... 10

*United States v. Hall*,
  64 F.4th 1200, 2023 WL 2777893, at *3 (11th Cir. Apr. 5, 2023). ................. 3

*United States v. Stefan*,
  784 F.2d 1093 (11th Cir. 1986) ................................................... 22

*United States v. Wilchcombe*,
  838 F.3d 1179 (11th Cir. 2016).................................................... 9

*Waite v. All Acquisition Corp.*,
  901 F.3d 1307 (11th Cir. 2018) ................................................... 13

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp. 2d 1 (D.D.C. 2010).................................................. 17

S̲T̲A̲T̲U̲T̲E̲S̲:

9 U.S.C. § 9  .......................................................................... 3

18 U.S.C. § 2334(a) ........................................................ 1, 2, 5, 6

28 U.S.C. § 1694................................................................... 4

28 U.S.C. § 3004 ................................................................... 3

Fed. R. Civ. P. 4.............................................................. 3, 5, 6

Fed. R. Civ. P. 4(e)(2)(B) ......................................................... 5

Fed. R. Civ. P. 4(f) .............................................................. 6,7

Fed. R. Civ. P. 4(f)(3) ............................................................ 5

Fed. R. Civ. P. 4(h). ............................................................ 3, 4

Fed. R. Civ. P. 4(h)(1)(B) ......................................................... 1

Fed. Ri. Civ. P.  4(k)(2) .................................................................. 7, 14

Fed. R. Civ. P. 9(b) ........................................................................ 15

Fed. R. Civ. P. 12(h) ....................................................................... 6

Fed. R. Civ. P. 30(d) ............................................................... 9, 23, 24

Fed. R. Civ. P. 30(d)(2) .......................................................... 21, 24

Federal Rule of Civil Procedure 37(b) .................................. 24

Fla. Stat. § 47.011 ......................................................................... 20

OTHER:

*The Unlimited Jurisdiction of the Federal Courts*,
    106 VA. L. REV. 1703 (2020) ............................................ 19

Appellee Qatar Islamic Bank ("QIB") seeks to avoid accountability in U.S. court for financing the Syrian terrorists who kidnapped and tortured an American citizen, Appellant Matthew Schrier. But QIB overstates the significance of the New York transaction records it produced, ignores that its silence about those transactions is substantive evidence, and disregards the uncontroverted complaint allegations. QIB has minimum contacts with the United States to support personal jurisdiction, and this Court should reverse the district court's dismissal.

## ARGUMENT

### I.    QIB misreads the ATA nationwide service provision, which authorized Schrier to serve QIB's Patriot Act agent in New York.

The Anti-Terrorism Act ("ATA") nationwide service provision authorizes "[p]rocess" in an ATA action to "be served in any district where the defendant resides, is found, or has *an agent*." 18 U.S.C. § 2334(a) (emphasis added). Schrier effected service under this provision by having process delivered to QIB's Patriot Act agent, Global Payments Advisory Group ("GPAG"), in New York. Schrier did not, as QIB incorrectly states, serve GPAG via "email." The return of service shows service by hand delivery. Doc. 6.

QIB protests that it did not designate GPAG to accept service, Appellee's Br. at 11, but it disregards the ATA's authorization for service on "an agent." 18 U.S.C. § 2334(a). Unlike other service rules, the ATA nationwide service provision's plain text does not require service on an agent designated to accept process. *Cf.* Fed. R.

Civ. P. 4(h)(1)(B) (service effected by "delivering a copy of the summons" to an "*agent authorized by appointment ... to receive service*" (emphasis added)). The Court should hold that service on GPAG, QIB's agent, satisfied the ATA.

QIB suggests Schrier waived this issue, Appellee's Br. at 13, but that is easily rejected. Schrier offered the proper interpretation of the ATA's nationwide service provision in response to QIB's first motion to dismiss. Doc. 38 at 1–4. The district court rejected Schrier's argument and then "reiterate[d] [its] conclusion" that "GPAG lacked authority to accept" the summons in the order on appeal. Doc. 182 at 14. QIB's amenability to service via GPAG was argued and decided below and is properly before this Court.

On the merits, QIB misinterprets the statute in five ways.

*First*, QIB miscasts the ATA nationwide service provision as a "*venue* provision" that "does not address upon *whom* service may be effected." Appellee's Br. at 14. QIB collapses two separate sentences of the nationwide service provision, 18 U.S.C. § 2334(a), which in full reads:

> Any civil action under [the ATA] against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

"The first sentence … is the venue provision and the second sentence is the nationwide service provision." *Kaplan v. Central Bank of Iran*, No. 10-cv-483, 2019

WL 2103424, at *2 (D.D.C. May 14, 2019).  The second sentence is redundant of the first and makes no sense unless read to specify *who* "may be served" with process—namely, an agent.  This Court "cannot adopt an interpretation" of the second sentence "that simply renders it superfluous."  *United States v. Hall*, 64 F.4th 1200, 2023 WL 2777893, at *3 (11th Cir. Apr. 5, 2023).

*Second*, QIB tries to graft Rule 4 onto the ATA nationwide service provision, claiming the ATA "does not displace [Rule 4's] requirements."  Appellee's Br. at 14. That cannot be right.  When Congress incorporates Rule 4 into a service statute, it does so expressly.[1]  It did not do so here.  What's more, Rule 4 itself forecloses QIB's reading.  By Rule 4's terms, it applies "[u]nless federal law provides otherwise." Fed. R. Civ. P. 4(h).  The ATA is "federal law," and it "provides otherwise."  The ATA itself supplies the manner for service of an ATA action.  This Court has explained in other contexts that "when a federal statute provides for nationwide service of process," the statute "becomes the statutory basis for personal jurisdiction over a person served *according to the statute*."  *SEC v. Marin*, 982 F.3d 1341, 1349 (11th Cir. 2020) (emphasis added).  The *Marin* court had no need to consider whether Rule 4 was also satisfied, because the statute there authorized service.

---

[1] *See, e.g.*, 28 U.S.C. § 3004 ("A complaint … required to be served" under the Federal Debt Collection Act "shall be served in accordance with the Federal Rules of Civil Procedure"); *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1277 (2d Cir. 1971) ("The phrase 'in like manner as other process of the court'" in 9 U.S.C. § 9 "refers to Fed. R. Civ. P. 4.").

*Third*, QIB leaps from the statutory phrase "an agent" to the conclusion that the ATA limits service to "an agent designated to accept service of the summons." *See* Appellee's Br. at 14–15.  That does not follow.  The statute's plain text contains no such requirement.  Nor does QIB's reading make sense in context of other service statutes and rules.  Congress expressly limits service to agents designated to accept process when it intends to.  *See* Opening Br. at 16–17 (collecting statutes).

Comparison to other service statutes makes the point.  Rule 4 allows service on a corporation's "officer" or "managing or general agent."  By contrast, in patent actions, plaintiffs may serve a defendant's "agent or agents."  28 U.S.C. § 1694.  Courts understand that this statute "does not require that service be made on an officer or managing agent."  *Stanley Works v. Globemaster, Inc.*, 400 F. Supp. 1325, 1335 (D. Mass. 1975); *see also Kerr v. Port Huron Sulphite & Paper Co.*, 157 F. Supp. 685, 688 (D.N.J. 1957) ("[W]e note that the above statute does not require that service be made upon an officer or a managing agent, *as in the case of other similar statutes*." (emphasis added)).  So too here.  Congress's decision to allow ATA service on "an agent," without limitation, demonstrates its intent to allow broader service than QIB recognizes.  QIB, for its part, simply ignores that the ATA does not include a limitation found in other service statutes.

*Fourth*, for similar reasons, QIB's reliance on the "normal rules" of agency law to interpret the statute collapses two conceptually distinct issues.  Appellee's Br.

4

at 14–15. Agency law's "normal rules" no doubt inform whether GPAG is "an agent" amenable to service under the statute. But QIB has never disputed that GPAG is "an agent." For purposes of "the procedural requirement of service," there simply "must be authorization for service of the summons" in the form of a statute. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). And there can be no doubt about Congress's power to authorize by statute service on agents other than those a defendant agrees may accept service. *See, e.g.*, *Eastman Kodak Co. v. S. Photo Mats. Co.*, 273 U.S. 359, 374 (1927) (Congress's power to "authorize the process to be issued … is not open to question").

To add an example to the patent statute cited above, Rule 4 allows service on an individual by giving the summons to "someone of suitable age and discretion" at an individual's home, Fed. R. Civ. P. 4(e)(2)(B), and it allows service abroad "by other means not prohibited by international agreement, as the court orders," Fed. R. Civ. P. 4(f)(3). To say, as QIB does, that the authorization for service turns on the defendant's designation of an agent to accept process would deny Congress its long-recognized power to make parties amenable to service as it sees fit.

*Fifth*, QIB's floodgates argument—that allowing ATA service on GPAG will "permit plaintiffs to serve private causes of action upon Patriot Act agents"—again ignores the difference between the ATA nationwide service provision and other service statutes or rules. QIB's is amenable to service via its agent GPAG because

5

this is an ATA action.  The ATA does not allow service in any other cases.  18 U.S.C. § 2334(a).  For negligence or breach of contract or even other statutory causes of action, plaintiffs will have to follow Rule 4 or applicable federal service statutes. Either way, faithfully interpreting the ATA service provision will not end in free-for-all service on Patriot Act agents, as QIB claims.

The bottom line is this.  Unlike other service statutes that require service on an agent designated to accept process, the ATA allows service on "an agent," full stop.  18 U.S.C. § 2334(a).  Congress has the power to make QIB amenable to service via "an agent," irrespective of whether QIB designates the agent to accept process. QIB has never denied that GPAG is its agent.  The Court should hold that service on GPAG effected service on QIB under the ATA and, consequently, that the ATA provides a statutory basis for the exercise of personal jurisdiction.

Because Schrier effected service under the ATA nationwide service provision, the exercise of personal jurisdiction satisfies due process requirements based on QIB's "aggregate contacts with the nation as a whole."  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997).  Schrier addresses QIB's contacts with the United States *infra* in Part III.

## II.    QIB concedes that it was properly served in Qatar under Rule 4(f).

QIB did not dispute in the district court and does not dispute on appeal that Schrier properly served it in Qatar under Rule 4(f).  *See* Appellee's Br. at 17–18.  As

the district court ruled, Doc. 182 at 19, QIB has thus conceded proper service of the summons under Rule 4(f).  *See* Fed. R. Civ. P. 12(h) (service defense "waive[d]" if not asserted in Rule 12 motion).  Although, as QIB says, the Court cannot exercise jurisdiction under the ATA based on service abroad, Appellee's Br. at 17–18, it can exercise jurisdiction under Rule 4(k)(2) and the Florida Long-Arm Statute.  *See Mwani v. bin Laden*, 417 F.3d 1, 8–12 (D.C. Cir. 2005) (holding that Rule 4(k)(2) confers jurisdiction over a defendant served abroad under Rule 4(f)).  Service in Qatar unlocks these other two statutory bases for jurisdiction, and the Court should reverse dismissal even if it concludes that QIB was not served via GPAG.

### III.    The ATA and Rule 4(k)(2) provide statutory bases for jurisdiction consistent with due process.

The district court could exercise personal jurisdiction under the ATA and Rule 4(k)(2) based on QIB's contacts with the United States as a whole.  The ATA provides a statutory basis for jurisdiction because Schrier served QIB under the nationwide service provision, as discussed above.  *See Republic of Panama*, 119 F.3d at 942.  QIB does not dispute the district court's ruling that Schrier met three requirements for jurisdiction under Rule 4(k)(2): (1) that the district court could invoke Rule 4(k)(2) because QIB refused to designate a court where it would be subject to jurisdiction; (2) that Schrier's claim arises under federal law; and (3) that Schrier served QIB.  *See* Appellee's Br. at 19–20 (quoting *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009)).  QIB also concedes that under Rule

4(k)(2) the "applicable forum for the minimum contacts analysis is the United States." *Id.* at 19; *see also Oldfield*, 558 F.3d at 1220.

QIB denies that its contacts with the United States—six correspondent account transactions ███████████████████████████████ and QIB's conspiracy with the terrorists that kidnapped Schrier—suffice for due process. Appellee's Br. at 24–39. QIB's position gives short shrift to the change in the law announced in *Ford v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), ignores the evidentiary weight of its silence, and fails to credit the complaint allegations.

### A. QIB is subject to jurisdiction based on New York correspondent account transactions.

QIB admits that it processed six transactions in its New York correspondent accounts in the period around Schrier's captivity, ███████████████████ ████████████████████████████████████████████████████ ██████████████████████████. Appellee's Br. at 25–26. Personal jurisdiction in this case does not, as QIB would have the Court believe, rest on the "mere maintenance" of correspondent accounts. *Id.* at 24. Rather, jurisdiction comports with due process because these six transactions in QIB's correspondent accounts "constitute[] purposeful availment and invocation of the benefits of the forum's laws." *SEC v. Carrillo*, 115 F3d 1540, 1546 (11th Cir. 1997).

These six transactions create a "relationship among [QIB], the forum, and the litigation" that supports personal jurisdiction. *Ford*, 141 S. Ct. at 1028. QIB disagrees. But its argument has two fundamental flaws.

First, like the district court, QIB relies *solely* on the transaction documents to argue that the transactions do not relate to Schrier's claims. QIB apparently has no answer to Schrier's point that its "silence" at its deposition is "substantive evidence." *United States v. Wilchcombe*, 838 F.3d 1179, 1191 (11th Cir. 2016). QIB never addresses its conspicuous refusal to testify except to say that it should not result in an adverse inference. Appellee's Br. at 32. That is wrong; QIB's silence should result in an adverse inference as a sanction under Rule 30(d), a point Schrier addresses *infra* Part V. But silence has evidentiary value irrespective of any sanction. QIB chooses to ignore that principle. This Court cannot.

The jurisdiction-supporting relationship between the six transactions and this litigation comes into view when looking at *all* the evidence—including what QIB refused to say. Schrier acknowledges the district court finding that, on their face, the transaction documents "strongly suggest that the three transactions" that preceded his escape funded legitimate organizations. Doc. 182 at 38. But transaction documents are far from the most reliable evidence of terror financing. A Nusra Front donor would not have written "for Schrier's detention" in the memo

line.  QIB's testimony was the only realistic way to discover what lay behind the documents, and to determine what QIB knew about the transactions.

Yet when asked directly, QIB refused to say whether the six transactions benefited the Nusra Front or Ahrar al-Sham—the Syrian terrorist groups that held Schrier captive.  Doc. 158 at 28.  QIB could have denied it, or said it did not know, but it chose to refuse to answer.  Silence is powerful evidence because "it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation."  *United States v. Hale*, 422 U.S. 171, 176 (1975).

The Court must weigh QIB's silence in Schrier's favor because, when the evidence conflicts, the Court "must construe all reasonable inferences in favor of the plaintiff."  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  What's more, the Court must accept that QIB knowingly used its correspondent account to finance Syrian terrorism because Schrier alleged that it did.  Doc. 149 ¶ 233.  QIB would have the transaction documents trump this and every other allegation in the case, but the documents do not go so far—especially given QIB's refusal to testify.  The Court must accept the complaint as true "to the extent … uncontroverted by the defendant's affidavits."  *Madara*, 916 F.2d at 1514.  Not only has QIB failed to controvert the allegation that it knew its correspondent account supported Syrian terrorism, its refusal to answer any questions about whether these transactions financed the Nusra Front or Ahrar al-Sham is substantive evidence that they did.  Doc. 158 at 28.

10

Second, QIB discounts the three post-escape transactions because, it says, these transactions cannot as a matter of law create personal jurisdiction unless they precede Schrier's escape. Appellee's Br. at 28. The district court reached the same conclusion. Doc. 182 at 48. But this Court cannot accept the principle QIB urges. *Ford* expressly rejected any "strict causal relationship" in the personal jurisdiction analysis. 141 S. Ct. at 1026. To require as a matter of law that QIB's forum contacts precede Schrier's escape is "strict causation" by another name.

The post-escape transactions support jurisdiction because they carried on with QIB's course of financing Syrian terrorism. The last transaction about which QIB produced evidence, executed ██████████████████████████████████ ████████████████████████████████████████████████. Doc. 169, Exs. F, I. QIB had ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████. Doc. 154 ¶¶ ████████████ . ████████████████████████████ was part of that same course of conduct; ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. Doc. 149 ¶¶ ████████ .

11

QIB again falls back on the correspondent transaction documents to dispute the well-pleaded allegations that it had a course of financing Syrian terrorism. Appellee's Br. 29 n.15. But QIB did not produce evidence of transactions in al-Kabi's or Qatar Charity's accounts in Syria. QIB made its choice not to controvert Schrier's allegations that it knew that al-Kabi and Qatar Charity used their QIB accounts to finance the Nusra Front and Ahrar al-Sham. Even where QIB presents *some* evidence, the Court must accept unconverted allegations as true. *See Madara*, 916 F.2d at 1514. The upshot is that QIB cannot overcome the allegations of its course of conduct lending its services to finance Syrian terrorism. And when the Court accepts that, it follows that the last transaction, ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████.

This result is fully consonant with the fairness concerns that underlie due process. *See Oldfield*, 558 F.3d at 1223–24. QIB can hardly claim surprise that it should be called into U.S. court to answer for ████████████████████████ ████████████████████████████. ████████████████████████████ ██████████████████████████████████████████████████ makes personal jurisdiction foreseeable. The fortuity of Schrier's escape prior to the last

transaction did not ████████████████████████████████████

██████████████████████████████████ .

For this reason, QIB's efforts to distinguish other cases is misplaced. To be sure, some courts have exercised personal jurisdiction based on more transactions than are present here. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013). But nothing in those cases *requires* millions of dollars of transfers or dozens of transactions. Nor could they consistent with Supreme Court precedent, which holds "even a single act can support [personal] jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.17 (1985).

Finally, QIB faults Schrier for the lack of precedent dealing with contacts like the post-escape transactions. But the limited case law should come as no surprise. Prior to *Ford*, this Circuit required but-for causation; a forum contact did not matter for jurisdiction unless it was "a 'but-for' cause of the tort." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1315 (11th Cir. 2018). Many other circuits imposed the same requirement—or even stricter proximate cause requirements. *See, e.g.*, *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuaha S.A.B. de C.V.*, 970 F.3d 1269, 1285 (10th Cir. 2020) ("[I]n contract actions, we have consistently applied the more restrictive proximate-cause approach."); *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019) ("[W]e have always required some *causal* relationship between an entity's in-forum contacts and the proceeding at issue."); *O'Connor v.*

*Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007).  A contact must obviously come before a tort to "cause" it.  Until recently, then, courts could not lawfully exercise jurisdiction based on contacts that post-date a tort.  The Supreme Court changed all that in *Ford*.

### B.  QIB is subject to jurisdiction because of its conspiracy with the Nusra front and Ahrar al-Sham.

Schrier alleged that QIB conspired with the Nusra Front and its agent Saad al-Kabi to fundraise for Syrian terrorism.  QIB did not submit contrary evidence. Accepting those uncontroverted allegations as true, as the Court must, *see Madara*, 916 F.2d at 1514, the district court had jurisdiction based on the conspiracy.  This Court should reverse its error in failing to exercise jurisdiction.

As an initial matter, the Court should reject QIB's argument that Rule 4(k)(2) precludes conspiracy jurisdiction.  Appellee's Br. at 34–35.  Rule 4(k)(2) authorizes jurisdiction "consistent with the United States Constitution and laws."  Under that broad grant of authority, district courts may exercise personal jurisdiction to the outer limits of due process—which undoubtedly includes conspiracy jurisdiction.  In a telling omission, QIB does not dispute that state long-arm statutes authorizing conspiracy jurisdiction are "completely in line with" due process.  *Kyko Global, Inc. v. Prithvi Info. Sols, Ltd.*, No. 2:18-cv-1290, 2020 WL 3654951, at *15 (W.D. Pa. July 6, 2020).  There is no cogent reason due process would allow conspiracy

14

jurisdiction under state law but not Rule 4(k)(2). Appellee's Br. at 34–35. The Court should therefore hold that conspiracy jurisdiction is cognizable under Rule 4(k)(2).

Since Rule 4(k)(2) allows the exercise of conspiracy jurisdiction, the district court erred by declining to exercise jurisdiction based on QIB's conspiracy with the Nusra Front. QIB, for its part, ignores Schrier's detailed allegations of a conspiracy. QIB specifically feigns ignorance of Nusra Front fundraiser Saad al-Kabi's use of its services to fund Syrian terrorism, claiming its own due diligence protocol would not have put it on notice of al-Kabi's Nusra Front affiliation. Appellee's Br. at 36.

QIB's argument is contrary to the uncontroverted allegations, which the Court must credit. *See Madara*, 916 F.2d at 1514. QIB's due diligence policies required it to verify the identity of a person opening an account and the purpose of the account, as well as periodic monitoring of the account in light of its declared purpose. Doc. 149 ¶ 246. No later than May 2013, while Schrier was in a terrorist-run prison, al-Kabi opened a QIB account in the name of his minor child. *Id.* ¶ 115. Al-Kabi used that account to run one of the most high-profile fundraising campaigns for Syrian terrorism in Qatar, including soliciting donations on social media and events at Qatar's Grand Mosque. *Id.* ¶¶ 117, 139, 185, 242. Donors from countries around the Middle East sent money to the account, *id.* ¶ 136, and enough money passed through the account to equip seven hundred terrorists, *id.* ¶ 195—hardly the sort of activity one would expect in a minor's account. "[K]nowledge … may be

alleged generally," Fed. R. Civ. P. 9(b), and these allegations more than plausibly allege QIB knowingly agreed to provide financial services for al-Kabi's fundraising, and then in fact did so. The allegations thus establish two elements of conspiracy: an agreement, and QIB's participation in it. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018).

The Court must credit these allegations, notwithstanding QIB's claim that they are "factually unsupported." *See Madara*, 916 F.3d at 1514. QIB submitted no evidence of its due diligence policies, no evidence of its application of those policies to the al-Kabi account, no evidence of its communications with al-Kabi, no evidence of what it knew about al-Kabi, and no evidence of what it knew about the Madid campaign. Not only that, QIB convinced the district court that it should not have to provide such evidence. *See* Doc. 147 (denying Schrier's motion to compel evidence of due diligence as "merit-based discovery"). QIB's failure to controvert Schrier's allegations means the Court must accept the allegations as true.

QIB's Response Brief scarcely addresses the final element of conspiracy jurisdiction—an act in support of the conspiracy in the forum. *See Charles Schwab Corp.*, 883 F.3d at 86. QIB totally ignores the Nusra Front's conversion of Schrier's accounts in the United States. Doc. 147 ¶¶ 73–80. And it dismisses the in-forum effects of the Nusra Front torturing Schrier to extract a ransom from the U.S. government, *id.* ¶¶ 58–72, because QIB says it was not a "primary participant" in

the kidnapping, Appellee's Br. at 37. But QIB does not (and cannot) dispute the principle that a conspiracy makes "[e]ach" co-conspirator "responsible for the others' actions." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Nor does QIB dispute that the district court would have jurisdiction over the Nusra Front. By joining the conspiracy, QIB became subject to personal jurisdiction based on the Nusra Front's conduct, just as if it had committed the Nusra Front's acts itself.

### C. QIB is subject to jurisdiction based on the in-forum effects of its conduct.

QIB is also subject to jurisdiction based on the U.S. effects of its support of anti-American terrorists. QIB wrongly conflates this distinct basis for jurisdiction with conspiracy jurisdiction. Appellee's Br. at 37. The Court can impute all the Nusra Front's forum contacts to QIB based on the conspiracy, *see Halberstam*, 705 F.2d at 477, "even with respect to actions that took place before [QIB] joined." *Koch v. Royal Wine Merchs., Ltd.*, 907 F. Supp. 2d 1332, 1346–47 (S.D. Fla. 2012). Under the effects test, QIB is subject to jurisdiction for its *own* independent conduct of financing the Nusra Front and Ahrar al-Sham. *See Mwani v. bin Laden*, 417 F.3d 1, 14 (D.C. Cir. 2005); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 35 (D.D.C. 2010); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1336 (D. Utah 2006).

QIB claims the district court correctly distinguished *Mwani*, *Wultz*, and *Morris*. Schrier has already explained why that is not the case in his Opening Brief,

17

at 39–44, and need not repeat all that was said here. But two additional points bear mention.

First, the effects test subjects QIB to personal jurisdiction even though it was not "a direct participant" in Schrier's kidnapping and detention. Appellee's Br. at 37. The *Morris* court aptly rejected a similar argument, explaining that terrorists require "more than a triggerman—they also require *financing*, planning and coordinating," such that "participation in [a] terrorist agenda" will subject a foreign defendant jurisdiction. 415 F. Supp. 2d at 1336 (emphasis added). QIB knowingly financed the Nusra Front's terrorist agenda, Doc. 147 at ¶¶ 111–22, 247–52, 254–59, and that suffices for jurisdiction under the effects test.

Second, QIB incorrectly limits its relevant conduct for the effects test to "three routine financial transactions" in its New York correspondent accounts. Appellee's Br. at 38. Under the effects test, "[j]urisdiction … may not be avoided merely because the defendant did not *physically* enter the forum." *Mwani*, 417 F.3d at 12. Instead, *any* conduct "purposefully directed toward residents of another forum" can establish jurisdiction—including conduct that occurs entirely abroad. *Id.* at 12–13 (quotation omitted). When assessing the U.S. effects of QIB's conduct, then, the Court must consider all that QIB did in Qatar to finance the Nusra Front and Ahrar al-Sham—including opening an account for al-Kabi to use to finance the Madid

campaign and donating to Qatar Charity with full awareness of its support of Syrian terrorism.  Doc. 147 at ¶¶ 111–22, 247–52, 254–59, 284, 286.

### D. Schrier preserves his claim that the Fifth Amendment sets different personal jurisdiction requirements than the Fourteenth Amendment.

QIB is correct that this Court has held that "courts should analyze personal jurisdiction under the Fifth Amendment using the same basic standards and tests that apply under the Fourteenth Amendment."  Appellee's Br. at 21 (quoting *Herederos*, 43 F.4th at 1308).  However, other courts have divided on this issue and continue to do so.  Schrier's Opening Brief cited the divided en banc Fifth Circuit decision of *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 249 (5th Cir. 2022) (en banc).  Judge Rao of the D.C. Circuit recently called for her court to "reassess what limits the Fifth Amendment places on the federal courts' exercise of personal jurisdiction over foreign defendants" in an appropriate case.  *Lewis v. Mutond*, 62 F.4th 587, 597 (D.C. Cir. 2023) (Rao, J., concurring).  As she and Fifth Circuit Judge Elrod have noted, the Supreme Court has never decided the limits of jurisdiction under the Fifth Amendment, and there is good reason to conclude as an originalist matter that the Fifth Amendment does not impose the same jurisdictional limits as the Fourteenth Amendment.  *See id.* at 598 (citing Stephen E. Sachs, *The Unlimited Jurisdiction of the Federal Courts*, 106 Vₐ. L. Rₑᵥ. 1703 (2020)).

19

To preserve the issue for further review, whether by this Court en banc or the Supreme Court, Schrier reiterates that the exercise of personal jurisdiction over QIB would comport with the Fifth Amendment, properly understood.

## IV.    The Florida Long-Arm Statute confers jurisdiction.

The Florida Long-Arm Statute confers jurisdiction based on QIB's conspiracy with the Nusra Front.   QIB challenges Florida Long-Arm jurisdiction on three grounds, none availing.

First, QIB claims it did not conspire with the Nusra Front.  Appellee's Br. at 41–42.  Schrier thoroughly refuted this above, in Part III.B.  Suffice it to say that QIB's documentary evidence does not controvert Schrier's conspiracy allegations, and the Court must therefore accept that QIB conspired with the Nusra Front.

Second, QIB distinguishes *Intercapital Funding Corp. v. Gisclair*, 683 So.2d 530 (Fla. 4th DCA 1996), on the ground that it was about venue and not personal jurisdiction.  But in Florida, both personal jurisdiction and venue depend on where a claim "accrued."  *See* Fla. Stat. § 47.011 ("Actions shall be brought only in the county … where the cause of action accrued."); *Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C.*, 9 So. 3d 651, 653 (Fla. 4th DCA 2009).  Conversion, as *Gisclair* held, is a "continuous act" that "may be said to have been committed" either where the defendant first took the property or where it converted the property into cash.  *Gisclair* is not alone in this recognition.  In *Lilly v. Bronson*, the Florida

Supreme Court held that a defendant who took a boat from one county to another "may have been charged to have … committed" conversion "in either county." 177 So. 218, 219 (Fla. 1937). These authorities recognize that conversion accrues both where the property is first taken *and* where it is subsequently taken.

Third, QIB gives the Florida Long-Arm Statute the same restrictive reading as the district court. QIB says the statute requires its Florida contacts to have been "essential to the success of the tort." Appellee's Br. at 43. But due process is "more restrictive" than the Long-Arm Statute, *Caiazzo v. Am. Royal Arts Co.*, 73 So.3d 245, 250 (Fla. 4th DCA 2011), and due process does not require causation. Florida courts have held that their Long-Arm Statute similarly "does not mean proximately caused by, but only requires a direction affiliation, nexus, or substantial connection." *Citicorp. Ins. Brokers (Marine), Ltd. v. Charman*, 635 So.2d 79, 82 (Fla. 1st DCA 1994).

## V.    This Court should remand for the district court to rule on Schrier's sanctions request.

Not once in its 49-page order did the district court address QIB's refusal to testify about transactions it executed in its U.S. correspondent on behalf of Saad al-Kabi and Qatar Charity. QIB's refusal to testify is sanctionable under Rule 30(d)(2) because it "impede[d]" and "frustrate[d] the fair examination of the deponent." The Court should remand for the district court to address Schrier's sanctions request.

QIB's contrary arguments all assume the district court denied the request, an assumption that finds no support in the record.

The district court's order gives the only indication of what it considered and ruled on. In 49 pages, the order never once mentions sanctions or QIB's refusal to testify. The district court's order did not have to address each of Schrier's arguments. But this Court should not simply assume the district court denied the unaddressed sanctions request, as QIB does. "In the absence of any evidence that [a] motion was actually disposed of by the district court," this Court has "vacate[d] and remand[ed]" for a ruling. *Lee v. Wash. Cty. Bd. of Educ.*, 682 F.2d 894, 897 (11th Cir. 1982).[2] The Court should follow that course here because the district court's non-exercise discretion gives nothing to review.

QIB's remaining arguments ask this Court to affirm the district court as "right for any reason." But "[b]ecause [this Court's] scope of review is narrower and a district court's range of choice broader under the abuse of discretion standard," this Court is "reluctant to address in the first instance issues to which that standard of

---

[2] QIB cites no authority for the proposition that this Court should deem the district court to have denied the motion. Schrier has located two published opinions. This Court held that a district court "implicitly overruled" oral objections made at trial by failing to rule on them. *United States v. Stefan*, 784 F.2d 1093, 1100 (11th Cir. 1986). And this Court held that a district court implicitly overruled a request for oral hearing by denying a motion. *Chalwest (Holdings) Ltd. v. Ellis*, 924 F.2d 1011, 1012 (11th Cir. 1991). There is a world of difference between those cases—one from a live trial environment and the other that addressed the substance of the motion—and the district court's opinion that made no mention of the sanctions request.

review applies." *Macklin v. Singletary*, 24 F.3d 1307, 1311 (11th Cir. 1994). Indeed,

"[o]nly where [this Court] can say that *any decision* but the one [it] reach[es] would

be an abuse of discretion should [it] proceed to decide an issue subject to that

standard of review without the benefit of a decision … by the district court." *Id.* at

1311–12 (emphasis added); *see also Sellers v. Rushmore Loan Mgmt. Servs., LLC*,

941 F.3d 1031, 1043 n.8 (11th Cir. 2019) (remanding for district court "to address"

class certification "in the first instance" because of "broad discretion"). The proper

course is remand, not to guess at how the district court might rule.

QIB's right-for-any-reason arguments also lack merit. The district court had

discretion to impose "appropriate sanctions" under Rule 30(d), contrary to what QIB

says.

First, QIB did not refuse to answer "merits questions," Appellee's Br. at 48, it

refused to answer questions at the heart of the jurisdictional issue. QIB's position

below and on appeal reveals its "merit questions" argument to be hollow. QIB

refused to testify whether transactions in its correspondent accounts benefited Syrian

terrorism, Doc. 170-4 at 8–14, but it then complained that Schrier failed to show

"any of the funds were transferred to, or otherwise benefited, the Madid campaign,

the Nusra Front, or Ahrar al-Sham." Doc. 156-1 at 15–16. The district court could

sanction QIB for refusing to testify and then exploiting its refusal to do so.

Second, QIB's claim of untimeliness ignores its post-deposition maneuvering to avoid testifying about the use of its services. Appellee's Br. at 46–47. After refusing to testify at the deposition, QIB asked to keep the deposition "open"— apparently to have the advantage of formulating answers with advantage of having previewed Schrier's examination. Doc. 158-3 at 13. QIB later proposed conferring about its testimony after a ruling on Schrier's then-pending motion to compel the production of documents. Doc. 158-6 at 5. After the ruling came, QIB for the first time refused to provide a live witness and instead offered attorney-drafted written answers. Doc. 158-8. Schrier timely requested sanctions three weeks later. What's more, the district court's local rule "is permissive and affords the Court discretion in whether to consider a late-filed motion." *Sandalwood Estates Homeowner Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-cv-807487, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010). Even if the request were untimely—and it is not—the decision whether to hear it lies with the district court. *See Macklin*, 24 F.3d at 1311.

Third, QIB tries to shift blame for its misconduct to Schrier, claiming "it was incumbent on him to timely move to compel." Appellee's Br. at 47–48. Not so. QIB confuses Federal Rule of Civil Procedure 37(b), which allows sanctions for "failure to comply with a court order," with sanctions under Federal Rule of Civil Procedure 30(d), which by its terms does not require the violation of an order. "[T]he plain language of Rule 30(d)(2) allow[s] courts to consider sanctions sua sponte,"

regardless of whether a party obtains an order compelling testimony. *Sec. Nat'l Bank v. Day*, 800 F.3d 936, 942 (8th Cir. 2015). Even QIB's cited authority holds that the opportunity for a post-deposition motion to compel "does not mean that a party can simply instruct a witness not to answer questions that the party's lawyer unilaterally deems irrelevant." *New World Network Ltd. v. M/V Norwegian Sea*, No. 05-22916-CIV, 2007 WL 1068124, at *4 (S.D. Fla. April 6, 2007). QIB claims the right to preview deposition questions, refuse to answer, and then put the burden on Schrier to compel. Rule 30(d)(2) does not authorize that kind of discovery gamesmanship.

QIB also improperly flips the burden. QIB, not Schrier, has the initial burden of producing evidence to challenge jurisdiction. *See Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir. 1999). QIB's choice not to provide testimony means the district court should have accepted Schrier's uncontroverted allegations as true—not that Schrier had to move to compel answers. *Madara*, 916 F.2d at 1514.

As a last resort, QIB says its answers would have exonerated it. Appellee's Br. at 48–49. If that is true, why did QIB refuse to answer in the first place? This Court cannot speculate about what QIB would have said if it lived up to its discovery obligations. Instead, the Court must draw inferences from QIB's refusal in Schrier's favor, as discussed above, and should remand for the district court to decide what to do about QIB's discovery misconduct.

## CONCLUSION

For these reasons, the Court should reverse the dismissal of Schrier's case and remand for further proceedings and a ruling on Schrier's request for sanctions.

Respectfully submitted this 27th day of April, 2023.

/s/ Matthew R. Sellers
John H. Rains IV
Georgia Bar No. 556052
Florida Bar No. 56859
Matthew R. Sellers
Georgia Bar No. 691202
rains@bmelaw.com
sellers@bmelaw.com
**BONDURANT, MIXSON & ELMORE, LLP**
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

***Attorneys for Plaintiff Matthew Schrier***

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,198 words as counted by Microsoft Office 365, the word processing software used to prepare this brief.

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office 635, Times New Roman, 14 point font.

*/s/ Matthew R. Sellers*
Matthew R. Sellers
Georgia Bar No. 691202

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed a true and correct copy of the foregoing **APPELLANT MATTHEW SCHRIER'S REPLY BRIEF** using the CM/ECF filing system which will cause copies to be served on counsel of record.  I further certify that I served an unredacted version of this appendix on counsel of record by email.

This 27th day of April, 2023.

*/s/ Matthew R. Sellers*
Matthew R. Sellers
Georgia Bar No. 691202